## 37316. CERVI v. THE STATE.

MARSHALL, Justice.

Michael Cervi was indicted for murder, kidnapping, armed robbery and motor vehicle theft. A jury found him guilty on all counts and sentenced him to death for the murder, kidnapping with bodily injury and armed robbery. A seven-year sentence was imposed for motor vehicle theft.

Cervi was an enlisted man in the U. S. Navy. After being turned down for leave, he and a shipmate, Robert Wilson, decided to take an "unauthorized leave." The pair left Charleston, South Carolina, hitchhiking. Outside Columbia, S. C., they were given a ride by Dr. Kenneth Lawrence, who was on his way to Atlanta, Georgia. When the doctor stopped and went inside a fast food restaurant for dinner, Wilson and Cervi planned to steal his car. Just outside Augusta, Cervi took a .30.30 rifle out of his sea bag and ordered Dr. Lawrence to exit off the Interstate onto U. S. 278. The pair took ten $100 bills from Dr. Lawrence and proceeded to march him some 150 yards off the road into a wooded area where he was tied to a tree using his necktie. Wilson hit Dr. Lawrence in the head several times with the butt of the rifle and Cervi stabbed him in the neck. Thereafter, the pair departed in Dr. Lawrence's car. Dr. Lawrence managed to free himself and get to the highway, from whence he was taken to the hospital. He died the next day, but was able to identify Wilson and Cervi as his assailants prior to death. The two defendants were stopped for speeding while still driving Dr. Lawrence's vehicle in Iowa. A check of the license revealed that they were wanted for murder in Georgia, and they were incarcerated. The appellant waived extradition and was returned to Georgia.

1. Enumerations of error 1, 2 and 3 contend that the verdict is contrary to law, contrary to the evidence and against the weight of the evidence. The appellant introduced no evidence at the guilt or innocence phase of the trial and, from a review of the trial transcript, the evidence amply supported the verdict and authorized a reasonable trier of fact to so find beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and *Tucker v. State,* 244 Ga. 721 (1) (261 SE2d 635) (1979). There is no merit in these enumerations of error.

2. Enumerations of error 4, 5, 6, 7 and 22 contend that the trial court erred in overruling the appellant's motion to suppress his confession, the physical evidence recovered from the victim's car, and oral admissions made while on the return flight to Georgia.

The appellant contends that his in-custody confession should be suppressed because of the following events: After the appellant's arrest about 9:30 a.m., he was taken before a magistrate at 4:00 p.m. for a probable-cause hearing, as required by Iowa law. He was advised of his right to counsel and asked if he wished to have counsel appointed, to which he answered in the affirmative. The hearing was continued until 10:00 a.m. the following day. During the night, two Georgia Bureau of Investigation agents and the district attorney from Toombs Circuit arrived in Iowa. They were not informed of the request for representation, and they were allowed to interview the

defendants. Each GBI agent was accompanied by an Iowa agent, while the district attorney conferred with his Iowa counterpart. Each of the defendants signed a written acknowledgement of his Miranda rights and waiver of counsel prior to interrogation and making a written confession. Meanwhile, appointed counsel had arrived, requested to see his clients, and was told to wait a few minutes and they would be made available.

The question thus presented is whether the request for counsel at the Iowa probable-cause hearing precluded interrogation of the appellant by the Georgia investigators without notifying appointed counsel and allowing him to be present.

The appellant was arrested on the basis of a Georgia warrant charging murder, and the purpose of the hearing was to determine if sufficient cause existed to hold the appellant for extradition to Georgia. The appellant had not been interrogated by the Iowa authorities, who were acting in a custodial capacity pending extradition. Nor did the appellant invoke his right to have counsel present during custodial interrogation. Furthermore, the Georgia authorities were completely unaware of the appointment of counsel. Therefore, we hold that, under the facts of this case, the appointment of counsel by one jurisdiction for the limited purpose of representation at a probable-cause hearing and extradition proceeding, did not prevent the appellant from giving an informed waiver of counsel prior to interrogation by the requesting state. The actions of the Georgia authorities were not a violation of the right to counsel as set forth by the U. S. Supreme Court in Edwards v. Arizona, —— U. S. —— (101 SC 1880, 68 LE2d 378) (1981).

There was no evidence of any threats, intimidations, promises or inducements. The trial court did not err in overruling the appellant's motion to suppress his confession and allowing it in evidence. Nor did the trial court err in failing to suppress statements made by the appellant to officers as he was being transported back to this state as the appellant had the benefit of his Miranda warnings. *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979).

The appellant's remaining contention, that the physical evidence obtained from the victim's vehicle should be suppressed, likewise has no merit, since the appellant has no standing to complain of the search of property belonging to another. Rakas v. Illinois, 439 U. S. 128 (99 SC 421, 58 LE2d 387) (1978); *Marshall v. State,* 153 Ga. App. 198 (264 SE2d 718) (1980); *Meyer v. State,* 150 Ga. App. 613 (258 SE2d 217) (1979).

3. Enumerations of error 8, 9, 10 and 11 contend that the trial court erred in denying the appellant's motion for change of venue because of pre-trial publicity and financial burden on the taxpayers

of the county. In addition, it is argued that because of disqualifications under Witherspoon, the appellant was denied a cross-section of the community from which to choose a jury.

The appellant's only argument at the hearing on the motion for change of venue was that, because 89 black veniremen were disqualified under Witherspoon, leaving only nine blacks on the jury panels put upon the appellant, the panel did not represent a cross-section of the community. This argument is without merit. *Brown v. State,* 247 Ga. 298 (3) (275 SE2d 52) (1981). Of the first panel put upon the appellant, four were black, and the appellant struck the remaining three after the state had previously struck one, leaving the appellant with all white jurors.

There was no evidence presented as to excessive publicity, and a review of the voir dire shows that no prospective juror had formed a fixed opinion as to guilt or innocence of the appellant or was excused for prejudice. *Messer v. State,* 247 Ga. 316 (276 SE2d 15) (1981).

The appellant having shown no error in the denial of the motion for change of venue, we find no merit in these enumerations of error. *Brooks v. State,* 244 Ga. 574 (1) (261 SE2d 379) (1979).

Likewise, the appellant's enumerations of error 13, 14 and 15, raising the issue of disqualification of jurors under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), have no merit. Each juror stated unequivocally that he was unalterably opposed to the death penalty. *Brown v. State,* 247 Ga. 298, supra; *Dampier v. State,* 245 Ga. 427 (7) (265 SE2d 565) (1980), and *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979).

In his sixteenth enumeration of error, the appellant complains of irregularities in the giving of the oath to the jurors prior to voir dire. The record is silent as to the type of oath given. However, the appellant did not object to the form of the oath nor does he cite any harm arising from any irregular administration of the oath. This enumeration of error is without merit. *Gilreath v. State,* 247 Ga. 814 (3) (279 SE2d 650) (1981).

4. Enumerations of error 17, 18 and 19 contend that the trial court erred in restricting the appellant's right to a thorough and sifting cross-examination of two witnesses for the state.

The doctor who treated the victim prior to his death was testifying using his personal notes to refresh his memory. Defense counsel had been furnished a copy of the doctor's notes. Defense counsel then sought to cross-examine the doctor on specific material contained in hospital records of the victim's treatment. As to the hospital records, the doctor testified that he had not made them, did not know who had, and could not attest to their accuracy. The trial court then restricted counsel to the material in the records that had

been prepared by the doctor. We find no error.

The other witness, a GBI agent, was being cross-examined about the return flight from Iowa, specifically as to the seating arrangement. Counsel sought to use a piece of poster board to diagram the seating arrangement and to display to the jury. The state objected to the diagram's being displayed to the jury unless it was entered in evidence. The trial court ruled that counsel may use the diagram of the seating arrangement in order to aid him in his questioning, but could not display it to the jury. Counsel was allowed to fully pursue the line of questioning, and, if error, it was harmless to restrict the use of illustrative devices. *Lewyn v. Morris,* 135 Ga. App. 289 (1) (217 SE2d 642) (1975).

5. Enumerations of error 20 and 21 contend that the trial court erred in allowing hearsay evidence over objection and in refusing to allow cross-examination of this witness about another witness' testimony at the preliminary hearing. The agent testified that he received information from the victim that caused him to go to Charleston, South Carolina, to investigate further. This testimony was admissible under Code § 38-302 to explain conduct. *Todd v. State,* 200 Ga. 582 (37 SE2d 779) (1946).

It was not error to restrict the cross-examination of this witness to his testimony. See Code § 38-1802.

6. Enumerations of error 23 and 24 contend that the trial court erred in refusing to give the appellant's request to charge on intervening cause and involuntary manslaughter.

The evidence does not support a conclusion that the victim died from any cause other than the blows to the head administered by Wilson and the stab wounds administered by Cervi. Although facts discovered in the post-mortem may have authorized different treatment, this was unknown to the attending physician and not discernible by reasonable examination. Furthermore, the trial court's charge, taken as a whole, correctly covered the subject matter of the appellant's request to charge. *Teal v. State,* 234 Ga. 159 (3) (214 SE2d 888) (1975).

As to the involuntary manslaughter request, the stabbing of another being a felony, Code Ann. § 26-1103 (a), the trial court did not err in failing to give these requested charges. See *Crawford v. State,* 245 Ga. 89 (3) (263 SE2d 131) (1980).

The appellant's reliance on Beck v. Alabama, 447 U. S. 625 (100 SC 2382, 65 LE2d 392) (1980), is misplaced. In Beck, the Supreme Court of the United States held that Alabama's statutory procedure, which prohibited a charge on a lesser included offense in a capital felony case where the evidence authorized such a charge, was constitutionally impermissible. In this case, there is not a scintilla of

evidence to support a charge of involuntary manslaughter.

7. Enumerations of error 25, 26, 27, 28 and 29 contend that the trial court erred in overruling the appellant's motions for mistrial and in failing to censure the district attorney in the presence of the jury.

The appellant testified at the sentencing phase of his trial as to his renewed faith and rebirth of his Christian beliefs. The district attorney in cross-examination questioned the appellant about his former testimony at the motion-to-suppress hearing when he invoked the Fifth Amendment as to questions on the truth of his confession. Defense counsel objected, and the jury was sent out while the objection was argued. The trial court sustained the objection and instructed state's counsel not to refer to this again nor to make reference to the appellant's failure to testify at the guilt or innocence phase of his trial. The jury returned and was instructed that any reference to the Fifth Amendment was excluded and to erase it from their minds and let it have no bearing upon any deliberation.

The appellant contends that a mistrial should be granted, since it violated the rule set out in Simmons v. United States, 390 U. S. 377, 394 (88 SC 967, 19 LE2d 1247) (1968), where it was held: "[W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the *issue of guilt* unless he makes no objection." (Emphasis supplied.)

The appellant testified during the sentencing phase of the trial and admitted cutting the victim's throat. The district attorney then cross-examined him and asked him why he pleaded not guilty. The appellant's counsel objected. While we do not approve of such a practice, such questioning was not reversible error. The appellant stood before the jury a convicted murderer and such questioning could not have prejudiced him as to sentence, especially when he admitted his guilt.

8. Enumerations of error 30, 31, 32, 33 and 34 contend that the trial court unduly restricted the testimony of the appellant's witnesses at the sentencing phase of the trial and in sequestering the witnesses.

The appellant complains of the exclusion of two newspaper articles concerning his new-found religion, which contained conclusions of the reporter after interviewing the appellant. The reporters were not called as witnesses and the appellant testified as to his religious beliefs and his renewed faith in God and Christ. The relevant testimony having been put before the jury, we see no error in excluding the articles themselves.

Whether to invoke the rule of sequestration at the sentencing phase of a capital case is always within the sound discretion of the

trial court, and we find no merit in this enumeration of error.

The appellant next complains of the exclusion of the results of a polygraph test and the testimony of the polygraph operator as to its reliability. Absent an agreement of both the parties, the results of a polygraph test are not admissible. *State v. Chambers,* 240 Ga. 76 (239 SE2d 324) (1977).

The remaining assertion is that the testimony of his mother was unduly restricted concerning the reason why the father could not be present for the trial. The appellant's father was hospitalized with terminal cancer and, on objection by the state, the witness was restricted to facts within her knowledge. Although it is better to allow testimony of facts and circumstances deemed pertinent in mitigation at the sentencing phase of a trial where the death penalty is sought rather than adhere to the technical rule of evidence, "we find no error under the facts of this case, since the witnesses, despite the objections which were sustained, were able to convey to the jury the circumstances concerning the . . ." illness of the appellant's father. *Brooks v. State,* 244 Ga. 574 (5), supra; *Collier v. State,* 244 Ga. 553 (11) (261 SE2d 364) (1979).

9. Enumeration of error 41 contends that the trial court erred in transferring the appellant to the custody of the Commissioner of Offender Rehabilitation prior to any ruling on his motion for new trial or his appeal to this court. Taliaferro County does not have a jail and it was necessary that the appellant be housed in the jail of a neighboring county at the expense of Taliaferro County.

We can not say that the trial court erred in certifying that the continued custody in the local jail constituted a dangerous condition, as required under Code Ann. § 77-340 (b). The appellant was returned when his motion for new trial was heard and ruled on, and we find no merit in this enumeration of error.

10. Enumeration of error 12 is deemed abandoned and enumeration of error 42, complaining of the overruling of the appellant's motion for new trial, is not meritorious. The remaining enumerations of error, complaining of imposition of the death penalty and the constitutionality of the statute, will be dealt with in the sentence review.

### Sentence Review

As required by Georgia Laws 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), we have reviewed the death sentence in this case. We have considered the aggravating circumstances found by the jury, and the evidence concerning the crimes and the defendant pursuant to the mandate of the statute. We conclude that the sentence of death imposed in this case was not imposed under the influence of passion,

prejudice, or any arbitrary factor.

The jury found the following aggravating circumstances: (a) "The offense [sic] of murder, armed robbery and kidnapping was [sic] committed while the offender was engaged in another felony (§ 27-2534.1 (b) (2)); and (b) the offense [sic] of murder, armed robbery and kidnapping was outrageously vile, horrible and inhuman in that it involved torture." Code Ann. § 27-2534.1 (b) (7).

The evidence supports a finding of both aggravating circumstances by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

However, the appellant contends that, because the jury returned a finding of an aggravating circumstance that was incomplete, the death penalty may not be imposed in this case. While we note that the jury's finding of Code Ann. § 27-2534.1 (b) (2) left out the word "capital" in referring to felonies, we need not decide whether the death penalty imposed in this case must be set aside on this ground. Where two or more statutory aggravating circumstances are found by the jury, the failure of one circumstance does not taint the proceeding so as to invalidate the other aggravating circumstances found in the sentence of death based thereon. *Green v. State,* 246 Ga. 598 (21) (272 SE2d 475) (1980); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974). No possible prejudice to the appellant resulted, because there was evidence of a capital felony properly before the jury, and such evidence beyond a reasonable doubt would support a finding that the murder occurred during a kidnapping with bodily injury and an armed robbery. *Green v. State,* supra.

In that the sentence of death in this case rests upon a finding of Code Ann. § 27-2534.1 (b) (7), it must be reviewed in light of the United States Supreme Court's decision in Godfrey v. Georgia, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980), as construed by this court in *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980). "Torture," as the term is used in the statute, occurs when the victim is subjected to serious physical abuse prior to death. *Hance v. State,* supra. The victim in this case was not killed instantaneously, but was beaten with the butt of a rifle and had his throat cut a minimum of three or a maximum of six times. He was tied to a tree and left to die after having suffered such physical abuse. The victim did not die until one day later. This was not a domestic murder, and the victim gave the appellant no reason whatsoever to assault him and was in no manner threatening. Rather, he had befriended the appellant and the co-defendant by giving them a ride. The appellant fled and attempted in every manner to hide his crime. See Godfrey v. Georgia, supra. The murder was outrageously or wantonly vile, horrible and

inhuman in that this murder is distinguished from ordinary murders in which the death penalty is not appropriate. *Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Green v. State,* 246 Ga. 598, supra. Under the facts of this case, this court finds that the murder was of the type universally condemned by civilized society as wantonly vile, horrible or inhuman as it involved torture to the victim, as set forth above.

We have reviewed the trial court's charge to the jury and found that it is not subject to the defects dealt with in *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977), or in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977).

The trial court sent out with the jury a copy of its charge during the sentencing phase of the trial, along with a written form to be used in returning the jury's findings. The appellant contends that the form used was unconstitutionally suggestive in that it placed undue emphasis on aggravating circumstances and failed to contain any reference to or space for the inclusion of mitigating circumstances which would serve to prevent the imposition of a death sentence. We do not agree. The material sent out with the jury conformed to the standard set forth in *Fleming v. State,* supra, and *Hawes v. State,* supra. A definition of mitigating circumstances was contained in the material, and the form specifically provided for the imposition of a life sentence even though the jury found the existence of aggravating circumstances. The appellant's thirty-fifth enumeration of error is therefore without merit. See *Strickland v. State,* 247 Ga. 219 (275 SE2d 29) (1981).

The appellant's co-defendant, Robert Wayne Wilson, was sentenced to life imprisonment. The question is thus presented whether, in light of the lesser sentence imposed on the co-defendant, the appellant's sentence to death is disproportionate.

Each case must be evaluated on its unique factual circumstance, as there is no simplistic rule that one co-defendant may not be sentenced to death when another co-defendant receives a lesser penalty. *Justus v. State,* 247 Ga. 276, supra; *McClesky v. State,* 245 Ga. 108 (263 SE2d 146) (1980); *Collins v. State,* 243 Ga. 291 (253 SE2d 729) (1979). We find material distinctions between the appellant's case and the case of the co-defendant. While it is true that the victim died from the combination of the physical abuse imposed upon his person by both defendants, the cutting of a human's throat illustrates an absolute intent to take life, which is more culpable under the facts of this case than the beating of a human being with the rifle butt. The appellant's statement negates his argument that he was coerced into killing the victim in that he himself testified that Wilson said "do it," but he did not point the rifle at him, he simply had it pointed down towards the ground. See *Dampier v. State,* 245 Ga. 427, supra. Also, it

must be noted that the appellant supplied the deadly weapons used in the armed robbery of the victim which ultimately led to the death of the victim. Juries in similar circumstances have sentenced one participant in a murder to death while the same penalty has not been imposed on other participants. *Collins v. State,* supra.

We find that the appellant's sentence to death is neither excessive nor disproportionate to the penalty imposed in the case of his co-defendant. In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. We find that the following similar cases listed in the appendix support the affirmance of the death penalty.

This was a brutal killing of an armed-robbery and kidnap victim for the sole purpose of financial gain and in order to eliminate witnesses. The 21 cases in which the death penalty was imposed support the death penalty in the instant case. All of these cases involve the deliberate, unprovoked killing of a robbery victim or victims, and thus show the jury's willingness to give the death penalty under these circumstances. The appellant's sentence to death for murder, and kidnapping with bodily injury, is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant. However, the appellant's sentence to death for armed robbery must be set aside and the appellant resentenced as to that offense. *Floyd v. State,* 233 Ga. 280, 285 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117, 126 (6) (210 SE2d 659) (1974); *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975).

*Judgment affirmed. Jordan, C. J., Clarke and Smith, JJ., concur. Gregory, J., concurs in the judgment only. Hill, P. J., dissents as to Divisions 2 and 7.*

DECIDED SEPTEMBER 29, 1981 —
REHEARING DENIED OCTOBER 20, 1981.

*Ivey & Associates, O. Torbitt Ivey, Jr.,* for appellant.
*Kenneth E. Goolsby,* District Attorney, *Arthur K. Bolton,* Attorney General, *W. Davis Hewitt,* Assistant Attorney General, for appellee.

APPENDIX.

*Justus v. State,* 247 Ga. 276 (276 SE2d 242) (1981); *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1980); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980); *Tucker v. State,* 244 Ga. 721 (261 SE2d 635) (1979); *Gates v. State,* 244 Ga. 587 (261 SE2d 349) (1979); *Cobb v. State,* 244 Ga. 344

(260 SE2d 60) (1979); *Baker v. State,* 243 Ga. 710 (257 SE2d 192) (1979); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Potts v. State,* 241 Ga. 67 (243 SE2d 510) (1978); *Moore v. State,* 240 Ga. 807 (243 SE2d 1) (1978); *Stanley v. State,* 240 Ga. 341 (241 SE2d 173) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970).