**Michael Albert CERVI, Petitioner-Appellant,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent-Appellee.**

No. 87–8449.

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1988.

Rehearing and Rehearing En Banc Denied Sept. 29, 1988.

James M. Doyle, Boston, Mass., George H. Kendall, Atlanta, Ga., Katz, Sasson &

Hoose, Springfield, Mass., for petitioner-appellant.

Michael J. Bowers, Atty. Gen., Paula K. Smith, Asst. Atty. Gen., of Georgia, Atlanta, Ga., for respondent-appellee.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

ANDERSON, Circuit Judge:

Petitioner Michael Cervi appeals the denial of his petition for a writ of habeas corpus. Because Cervi's confession was obtained in violation of the rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we reverse the judgment of the district court and remand with instructions that the district court grant the writ.

## I. FACTS

The facts relevant to our decision are as follows. On the morning of March 3, 1977, Iowa State Trooper James Brumbaugh stopped a car for speeding in Mills County, Iowa. Cervi was driving the car, and his travelling companion, Robbie Wilson, was in the back seat. Upon learning that Cervi and Wilson were wanted for murder in Georgia, Brumbaugh arrested Cervi and Wilson and transported them to the Mills County Jail in Glenwood, Iowa.

During the afternoon of March 3, Cervi was brought before Iowa magistrate Esther Engle. When Magistrate Engle asked whether Cervi wanted counsel, Cervi answered yes. The proceedings were then adjourned until counsel could be obtained. Shortly thereafter, the Iowa prosecutor, Walter Green, contacted a local attorney, James Thomas, concerning the matter. Thomas agreed to represent Cervi, but he told Green that he could not see Cervi until the next morning. Magistrate Engle then appointed Thomas to represent both Cervi and Wilson.[1]

At some time before 9:30 the next morning, Georgia district attorney Kenneth Goolsby and Georgia Bureau of Investigation agent Robert Ingram arrived at the Mills County Sheriff's Office. At their request, Cervi was brought to the sheriff's office from the jail, a separate building a short distance away. At 9:30, Ingram, accompanied by Iowa Bureau of Criminal Investigation agent Gary Price, took Cervi to a private room near the sheriff's office. Ingram read Cervi a standard *Miranda*[2] form and obtained his signature on it. Ingram then summarized the evidence against Cervi, and Cervi confessed orally to the crime.[3] At 10:06, Ingram began writing out Cervi's confession, and Cervi signed it at 10:56.

---

1. Although the record does not contain a form on which Magistrate Engle appointed Thomas, the record indicates that she did appoint him on the afternoon of March 3. At the extradition hearing held on March 4 before a different judge, Iowa prosecutor Green stated:

   Each of the gentlemen, both Mr. Cervi and Mr. Wilson, at the time of the hearing before Magistrate Engle [on March 3] were asked if they wished to have an attorney for the proceedings. Each said they wished—each responded "yes," they did. A few moments after the request was made, after each of the young men were brought before Magistrate Engle, separately, Mr. James A. Thomas was called on the telephone by Magistrate Engle— by myself; I'm sorry—and *Magistrate Engle then and there did appoint Mr. James A. Thomas to represent the two of them,* and since that time the matter was continued until 10:00 o'clock this morning. . . .

   Transcript of March 4, 1977 Extradition Hearing at 3-4 (emphasis added). (We cite to the original transcriber's pagination which varies by one page from the pagination assigned by the state trial court.)

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Agent Ingram testified as follows at the federal evidentiary hearing:

   I met Mr. Cervi at approximately 9:30 that morning[;] we talked for approximately 30 minutes. After which he orally provided me with an admission to the crime. [sic] I then ask[ed] him if he would have any objection to my reducing what he told me to writing. He stated that he did not. At 10:06 a.m. I began a written statement that concluded at 10:56. So, it was about an hour and a half oral and written interview.

   Transcript of April 24, 1987 Federal Evidentiary Hearing at 29.

Meanwhile, Cervi's attorney, James Thomas, had arrived at the courthouse. At 9:15, Thomas began seeking access to his clients. He made two requests to the Mills County Sheriff, Merle Brown. Sheriff Brown told Thomas that he would have to wait. At 9:30, Thomas stepped into a nearby office where Iowa prosecutor Green and Georgia prosecutor Goolsby were conferring. Thomas insisted that he be allowed to see his clients, but the prosecutors refused his request.[4] After conferring with another lawyer by telephone, Thomas again demanded that the prosecutors allow him to see his clients at 9:45, but the prosecutors continued to deny him access. Cervi was never advised of the presence of Thomas.

Later that morning, an extradition hearing was held, and the events surrounding the confession were put on record, including Thomas' repeated requests for access to his clients. Cervi then waived extradition, and Goolsby and Ingram brought him back to Georgia. Cervi was tried and convicted of murder, kidnapping, armed robbery, and motor vehicle theft. During the trial, the state introduced, over defense objections, Cervi's written confession as well as Ingram's testimony as to his oral confession.[5] The jury sentenced Cervi to death on the murder, kidnapping and armed robbery counts.[6]

## II. PROCEDURAL HISTORY

On September 29, 1981, the Georgia Supreme Court affirmed Cervi's conviction, but it vacated his death sentence on the armed robbery count, leaving intact the death sentences on the murder count and the kidnapping count. *Cervi v. State*, 248 Ga. 325, 282 S.E.2d 629 (1981). The United States Supreme Court denied Cervi's petition for certiorari on April 19, 1982. *Cervi v. Georgia*, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982).

Cervi next sought a state writ of habeas corpus in the Superior Court of Butts County, Georgia. That court held an evidentiary hearing on September 19, 1983, and it denied all relief in an unpublished order dated June 7, 1984. The Georgia Supreme Court vacated Cervi's death sentence on the kidnapping count, but it affirmed the denial of relief in all other respects in an unpublished order dated November 16, 1984. Thus, the death sentence on the murder count remained in effect. The United States Supreme Court denied certiorari on May 28, 1985. *Cervi v. Kemp*, 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985). The Supreme Court

---

**4.** At the extradition hearing held on March 4, Thomas created a record of the morning's events. Thomas called Iowa prosecutor Green as a defense witness and questioned him as follows:

[THOMAS] Mr. Green, is it a fact that you contacted myself to represent both Robert Wayne Wilson and Mr. Michael Albert Cervi yesterday afternoon, Thursday, March 3rd at approximately 4:15 p.m.?

[GREEN] The time I couldn't be sure of, but I know the hearing was after 3:45. That's when the complaint was filed. So about 4:00 o'clock or 4:15 sounds about right. I did call you and did tell you—did ask you if you would represent Cervi and Wilson and you responded you would.

[THOMAS] And, Mr. Green, is it not the fact that I told you I have discussed [would discuss?] the merits of the controversy with the defendants on Friday morning, March 4, 1977, with some restrictions as to place and manner? Is that correct?

[GREEN] Yes. You told me that you had other appointments even [sic] yesterday evening and you would get together with them tomor-

row morning which would be this morning, and before the hearing.

[THOMAS] And is it not a fact that I attempted to contact the defendants this morning, Friday, at 9:30 a.m. and was refused permission by yourself to interview or talk with either of the defendants? Is that correct?

[GREEN] That's right, at 9:30.

[THOMAS] Is it also a fact that you told me at that time that the defendants were being interviewed by agents of the Bureau of Criminal Investigation for the State of Georgia, and that I insisted that I had a right to be present at the time of that interview?

[GREEN] You told me that.

[THOMAS] And is it a fact that you again refused me permission to talk with or advise or counsel with either of these defendants at that time?

[GREEN] That's right.

Transcript of March 4, 1977 Extradition Hearing at 29–30.

**5.** Trial Transcript, vol. 4 at 901–02, 920–25.

**6.** The judge also sentenced Cervi to seven years on the motor vehicle theft charge.

denied rehearing on July 1, 1985. *Cervi v. Kemp*, 473 U.S. 921, 105 S.Ct. 3548, 87 L.Ed.2d 671 (1985).

On January 24, 1986, Cervi filed a petition for federal habeas relief in the Southern District of Georgia.[7] On February 17, 1987, the district court denied relief on all but two grounds (the confession issue and the conspiracy charge issue) and ordered an evidentiary hearing as to those two grounds. The court held the evidentiary hearing on April 24, 1987. At the conclusion of the hearing, the court announced its intention to deny relief on the two remaining grounds, and it issued an order to that effect on May 20, 1987. On June 18, 1987, the court granted Cervi's application for a certificate of probable cause to appeal, and this appeal followed.[8]

## III. DISCUSSION

■ Cervi claims that the Georgia authorities illegally obtained his confession by initiating custodial interrogation after he had requested counsel in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[9] *Edwards* held that an accused in custody "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85, 101 S.Ct. at 1885. The Supreme Court has consistently reaffirmed the bright-line rule of *Edwards. Arizona v. Roberson*, ⸺ U.S. ⸺, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); *Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985); *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983);

7. Cervi raised twenty issues in his petition for relief in the district court: (1) that his confession was improperly admitted; (2) that his motion for change of venue was improperly denied; (3) that the exclusion from the jury of venirepersons who expressed complete opposition to the death penalty improperly prevented blacks from serving on the jury; (4) that venirepersons who expressed partial opposition to the death penalty were improperly struck from the jury; (5) that his opportunity to cross-examine certain witnesses was improperly limited; (6) that hearsay evidence was improperly admitted; (7) that he was denied the right to present a defense; (8) that the jury was improperly instructed on causation; (9) that the jury was improperly instructed on lesser-included offenses; (10) that the jury was improperly instructed on malice and intent; (11) that the jury was improperly instructed on conspiracy; (12) that his presentation of evidence at the penalty phase was improperly limited; (13) that during the penalty phase the prosecutor improperly commented on Cervi's assertion of his Fifth Amendment rights; (14) that the prosecutor made an improper closing argument during the penalty phase; (15) that the jury was improperly instructed on aggravating circumstances; (16) that the jury was not given sufficient guidance concerning the application of O.C.G.A. § 17–10–30(b)(7); (17) that appellate review of his case was inadequate; (18) that the Georgia death penalty was arbitrarily applied; (19) that the Georgia death penalty was discriminatorily applied; and (20) that the definition of certain aggravating circumstances was vague and overbroad.

8. On appeal, Cervi raised seven issues: (1) that his confession was improperly admitted (Issue 1 in footnote 3); (2) that the jury was improperly instructed on lesser-included offenses (Issue 9 in footnote 3); (3) that the jury was improperly instructed on malice and intent (Issue 10 in footnote 3); (4) that the jury was improperly instructed on conspiracy (Issue 11 in footnote 3); (5) that his presentation of evidence at the penalty phase was improperly limited (Issue 12 in footnote 3); (6) that during the penalty phase the prosecutor improperly commented on Cervi's assertion of his Fifth Amendment rights (Issue 13 in footnote 3); and (7) that the prosecutor made an improper closing argument during the penalty phase (Issue 14 in footnote 3).

Because our disposition of the confession issue requires a new trial, we need not address the other issues raised on appeal. Though we do not reach these issues at this point, they are not abandoned. We also note that Cervi attacks the admission of his confession on both Fifth and Sixth Amendment grounds. Because of our decision on the Fifth Amendment issue, we do not reach the Sixth Amendment issue, but we note that it is not abandoned. The other issues raised in the district court (i.e., Issues 2–8 and 15–20 in footnote 3) were not raised on appeal, and we deem them abandoned.

9. *Edwards* applies to this case because this case was pending on direct appeal when *Edwards* was decided. *Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).

*Wyrick v. Fields,* 459 U.S. 42, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). *See also Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) (applying a similar bright-line rule in the Sixth Amendment context).

Under these facts, the *Edwards* violation is clear. Cervi unequivocally invoked his right to counsel at the initial proceeding before the magistrate. He was in uninterrupted custody from that time until after he gave his incriminating statement. He did not in any way initiate the conversation that led to the statement. The Georgia authorities knew of Cervi's request for counsel prior to the time that he made his confession.[10]

■ The district court held that Cervi's execution of a *Miranda* waiver form prior to beginning his confession constituted a waiver of his previous assertion of his right to counsel. Transcript of April 24, 1987 Federal Evidentiary Hearing at 56–62. This holding is contrary to *Edwards.* In *Edwards,* the court held "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation *even if he has been advised of his rights.*" 451 U.S. at 484, 101 S.Ct. at 1884 (emphasis added and footnote omitted). *See also Solem,* 465 U.S. at 646, 104 S.Ct. at 1343 (*"Edwards* established a new test for when [the waiver of right to counsel during custodial interrogation] would be

acceptable once the suspect had invoked his right to counsel: the suspect had to initiate subsequent communication."). Because Cervi did not initiate the conversation which led to his confession, he did not waive his right to have an attorney present during that interrogation by signing the *Miranda* form.

■ The state argues that Cervi's request for counsel did not trigger the protections of *Edwards* because it was not made during custodial interrogation. In other words, the state argues that Cervi's request for counsel at the hearing before Magistrate Engle was a request for counsel for formal legal proceedings and was not a request for counsel during custodial interrogation by police. We reject the state's argument. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) clearly requires us to give Cervi's request a broad interpretation:

> Doubts must be resolved in favor of protecting the constitutional claim. This settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel—we presume that the defendant requests the lawyer's services at every critical stage of the prosecution. We thus reject the State's suggestion that respondents' request for the appointment of counsel [at arraignment] should be construed to apply only to representation in formal legal proceedings.

*Id.* 106 S.Ct. at 1409 (footnotes omitted).[11] Since Cervi in no way limited his request, it must be construed to extend to custodial

**10.** It is undisputed that Georgia prosecutor Goolsby was present when defense attorney Thomas made his 9:30 request for access to Cervi and that Goolsby joined with Iowa prosecutor Green in denying access. Although it is unclear whether GBI agent Ingram knew of Cervi's request, we have no trouble in imputing Goolsby's knowledge to Ingram when Goolsby was just a few steps away and could have stopped the interview. *See Arizona v. Roberson,* — U.S. —, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704 (1988) ("Finally, we attach no significance to the fact that the officer who conducted the second interrogation did not know that respondent had made a request for counsel.... *Edwards* focuses on the state of mind of the suspect and not the police.... The [interrogator's] failure to honor [the request for counsel] cannot be justified by the lack of diligence of a particu-

lar officer." (footnote and citation omitted)). *Cf. Michigan v. Jackson,* 106 S.Ct. at 1410 (imputing knowledge of request for counsel from one state actor to another in a Sixth Amendment context). Moreover, Ingram did not begin his interview with Cervi until 9:30, and he spent considerable time reading Cervi his *Miranda* rights and summarizing the evidence. *See* footnote 3, *supra,* and accompanying text. Thus, Goolsby clearly knew of Cervi's request before Cervi began to confess. For these reasons, we need not address the question of whether the Iowa authorities were agents of the Georgia authorities.

**11.** The holding in *Michigan v. Jackson* quoted in the text was a secondary holding in the case. The primary holding was the application in the

interrogation. *Cf. Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (defendant may, by his own language, limit his request for counsel to certain settings).

## IV. CONCLUSION

The state obtained Cervi's confession in violation of his Fifth Amendment rights as set forth in *Edwards.* The admission of the tainted confession requires a new trial.[12] For the foregoing reasons, the judgment of the district court is REVERSED and REMANDED with instructions to grant the writ conditioned upon the state's affording Cervi a new trial within a reasonable time.

REVERSED and REMANDED.

Sixth Amendment context of *Edwards'* bright-line rule. After lengthy discussion, *Fleming v. Kemp,* 837 F.2d 940 (11th Cir.1988), applied *Michigan v. Jackson*'s bright-line rule retroactively to the penalty phase of a case pending on collateral attack at the time *Michigan v. Jackson* was decided. *Michigan v. Jackson*'s secondary holding—i.e. the application of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), waiver principles quoted in the text above—was also applied retroactively without discussion in *Fleming,* 837 F.2d at 947, and also in *Owen v. Alabama,* 849 F.2d 536, 538–39 (11th Cir.1988). Indeed, the Supreme Court in *Michigan v. Jackson* characterized its application of *Johnson v. Zerbst* waiver principles as the "settled approach." 106 S.Ct. at 1409.

Therefore, we believe *Jackson* undermines this circuit's decisions in *Collins v. Francis,* 728 F.2d 1322 (11th Cir.), *cert. denied,* 469 U.S. 963,

105 S.Ct. 361, 83 L.Ed.2d 297 (1984) and *Blasingame v. Estelle,* 604 F.2d 893 (5th Cir.1979). Both *Collins* and *Blasingame* held that a request for counsel at an arraignment is not a request for counsel for purposes of subsequent police-initiated interrogation. We note that at least one circuit has already indicated that *Jackson* undermines *Collins* and *Blasingame. United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 123–24 n. 5 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987). *See also Boles v. Foltz,* 816 F.2d 1132, 1137–41 (6th Cir.), (Gibson, J., dissenting), *cert. denied,* —— U.S. ——, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987); *Wilson v. Murray,* 806 F.2d 1232 (4th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987).

**12.** The state has not argued that the admission of Cervi's confession was harmless error.