THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST PERRY, Defendant-Appellant.

Fifth District   No. 5—88—0549

Opinion filed November 19, 1990.

Daniel M. Kirwan and John T. Hildebrand, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William R. Haine, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, also of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Following a jury trial in the circuit court of Madison County, defendant, Ernest Perry, was convicted of two counts of murder under section 9—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)) and two counts of home invasion under section 12—11(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2)) in connection with the stabbing deaths of Alvin Autery and Mary Irwin. The circuit court denied defendant's post-trial motions and imposed concurrent sentences of imprisonment for natural life without parole on each of the murder convictions and 30 years' imprisonment on each of the home invasion counts. Defendant now appeals, and the central question before us on review is whether the circuit court erred in refusing to suppress defendant's confession at trial. For the reasons which follow, we hold that it did. We therefore reverse defendant's convictions and remand for a new trial.

The record before us establishes that defendant was arrested on January 6, 1987, pursuant to an outstanding robbery warrant. That warrant was unrelated to any of the crimes for which he was tried and convicted in this case. Defendant was transported to the police station in Alton, Illinois, where he was "booked" and advised of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Defendant was then interviewed by Alton Police Officer Anthony Ventimigila and a detective named Pyatt, regarding the Autery-Irwin murders. During that interview, defendant gave an oral statement in which he denied any knowledge of the murders.

The following day, defendant appeared before Judge Isbell of the circuit court of Madison County, where he was arraigned on charges of robbery and aggravated battery. These charges were related to the initial robbery warrant pursuant to which defendant was arrested, but they were wholly unrelated to the Autery-Irwin murders. At the arraignment, defendant requested that an attorney be appointed to represent him. The circuit court granted this request, appointed a public defender to represent him, and directed that defendant be transferred to the Madison County jail that day. The Alton police, however, subsequently obtained a "hold order" so that they could keep defendant in their municipal jail for another day and interrogate him further.

On the following day, January 8, 1987, the Alton police interviewed defendant once again regarding the Autery-Irwin murders. Prior to that interview, defendant was again advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct.1602. Defendant then proceeded to give a statement in which he

confessed to having been involved in the crime which culminated in the murders of Autery and Irwin.

According to defendant's confession, he accompanied an individual named Thurmon when Thurmon went to the victims' home to steal their television set. Defendant stated that Thurmon told him to wait outside and act as a lookout while he, Thurmon, broke into the house. Defendant stated that while he was standing outside he heard Thurmon break in through the door. After a few minutes, defendant heard the sound of a man's voice and woman's voice "yelling and screaming." He indicated that he then became frightened and fled the scene, returning to his own house.

Defendant told the police that Thurmon came by his house 15 minutes or so later and told him that he had stabbed the victims. According to defendant, Thurmon later explained that when he had confronted the victims in their home, he demanded money from them. When he found that they had none, he began "beating on them." Thurmon related to defendant that when the victims then started screaming and threatening to call the police, he stabbed them. In his confession, defendant denied that he was directly involved in these stabbings. He stated that he did not go into the victims' house and claimed that he "didn't know that Thurmon was going to kill anyone."

The day after the police obtained this confession, defendant was charged with murder and home invasion in connection with the break-in of the victims' house and their subsequent stabbing deaths. Prior to his trial on those charges, defendant filed a motion to suppress his confession, arguing, *inter alia*, "[t]hat the statements sought to be suppressed were obtained as a result of interrogation which continued after the defendant had elected to remain silent and/or had elected to consult with an attorney prior to further questioning," and "[t]hat the statements sought to be suppressed were obtained as a result of interrogation which took place outside the presence of counsel and after the defendant had been formally charged with an offense and after the appearance of counsel had been entered of record."

Following a hearing, defendant's motion to suppress was denied in an order entered by the circuit court on May 4, 1988. The following month, the United States Supreme Court issued its opinion in *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093. Based upon that decision, defendant filed a motion requesting that the circuit court reconsider its ruling on his motion to suppress. That motion was also denied, and defendant's confession was ultimately admitted into evidence against him at trial.

■ We agree with defendant that the circuit court's suppression order was erroneous. The fifth amendment to the United States Constitution guarantees that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) The fifth amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations. (*Miranda v. Arizona* (1966), 384 U.S. 436, 469-70, 16 L. Ed. 2d 694, 721, 86 S. Ct. 1602, 1625-26.) Following *Miranda*, the Supreme Court held in *Edwards v. Arizona* (1981), 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885, that, under the fifth amendment, an accused person in custody who has requested the aid of an attorney and thereby "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." This rule was violated here.

■ As we have indicated, when defendant was arraigned on robbery and aggravated battery charges on January 7, 1987, he requested that an attorney be appointed to represent him. The court then entered an order appointing the public defender to serve as defendant's counsel. There is nothing in the record before us to indicate that when defendant made his request he was seeking legal assistance only with respect to the formal legal proceedings which had then been initiated against him. Accordingly, defendant's request must be construed as a general request for legal assistance, pursuant to the fifth amendment, in any subsequent interrogation to which he might be subjected while he remained in continuous physical custody. (*United States v. Wolf* (6th Cir. 1989), 879 F.2d 1320, 1322; *United States ex rel. Espinoza v. Fairman* (7th Cir. 1987), 813 F.2d 117, 123, *cert. denied* (1987), 484 U.S. 1010, 97 L. Ed. 2d 745, 107 S. Ct. 3240; see *Michigan v. Jackson* (1986), 475 U.S. 625, 633, 89 L. Ed. 2d 631, 640, 106 S. Ct. 1404, 1409; *Cervi v. Kemp* (11th Cir. 1988), 855 F.2d 702, 706-07, *cert. denied* (1989), 489 U.S. 1033, 103 L. Ed. 2d 230, 109 S. Ct. 1172.) Under *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the police were therefore prohibited under the fifth amendment from initiating any further interrogation of him, as they did, without first making counsel available to him.

■ No claim can be made here that defendant subsequently waived his fifth amendment right to counsel. Although he did respond to further police questioning the day after his arraignment and signed the confession the police elicited from him after being advised of his rights under *Miranda v. Arizona*, the United States Supreme Court

made clear in *Edwards* that where, as here, the State impermissibly initiates an interrogation after an individual has invoked the fifth amendment right to counsel, it may not establish that the suspect waived the right to counsel merely by showing that the suspect "responded to further police-initiated custodial interrogation even if he ha[d] been advised of his rights." (451 U.S. at 484, 68 L. Ed. 2d at 386, 101 S. Ct. at 1885.) Indeed, the Supreme Court has held that when the State impermissibly initiates an interrogation after a defendant's assertion of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid. *Michigan v. Jackson* (1986), 475 U.S. 625, 636, 89 L. Ed. 2d 631, 642, 106 S. Ct. 1404, 1411.

■ That the police violated defendant's fifth amendment rights under the rule of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, when it initiated interrogation of him on January 8, 1987, is not altered by the fact that the January 8 interrogation concerned crimes, the Autery-Irwin murders, which were unrelated to the robbery and aggravated battery charges for which defendant had been arrested and on which he had been arraigned the previous day. In *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093, the United States Supreme Court held that where a defendant remains in custody, as was the case here, the rule articulated in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, prohibits any police-initiated interrogation following the defendant's request for counsel even where, as in this case, the right to counsel has been invoked during a proceeding that concerns one crime and the subsequent interrogation occurs in the context of an investigation regarding a second, unrelated crime.

■ The State seeks to avoid application of *Arizona v. Roberson* here on the grounds that it was not decided until after the hearing was held on defendant's motion to suppress and should not be given retroactive effect. In support of this claim, the State cites *Butler v. McKellar* (1990), 494 U.S. 407, 108 L. Ed. 2d 347, 110 S. Ct. 1212, but that case is inapposite. *Butler* held only that *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093, could not be applied retroactively to cases which had become final on direct appeal and were before the court for collateral review. In this case, defendant's conviction was not yet final at the time *Arizona v. Roberson* was decided. Indeed, defendant's trial had not yet even commenced. Accordingly, *Arizona v. Roberson* controls our analysis of defendant's fifth amendment rights. See *United States v. Wolf* (6th Cir. 1989), 879 F.2d 1320, 1322 n.1.

■ In sum, because defendant must be deemed to have invoked his fifth amendment right to counsel at his arraignment on the robbery and aggravated battery charges, the police were barred from initiating any subsequent interrogation of him concerning any crime, including the Autery-Irwin murders, while defendant remained in their custody. Under the authorities cited above, no valid waiver of this right was made. By interrogating defendant about the Autery-Irwin murders in the absence of his lawyer, the police therefore violated his fifth amendment right to counsel. Accordingly, the circuit court should have granted defendant's motion to suppress.

■ Because defendant's confession was admitted into evidence at his trial for the murders of Autery and Irwin, and because no claim has been made by the State that the admission of that confession constituted harmless error, we reverse defendant's convictions and remand this cause for a new trial. In light of this disposition, we need not reach defendant's alternative arguments that his sentence was improper or that he is entitled to a new hearing on his post-trial motion.

Reversed and remanded.

RARICK and HOWERTON, JJ., concur.