**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mary Alice WOLF,**
**Defendant–Appellant.**

**No. 87–5816.**

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1988.

Decided July 12, 1989.

Stephen D. Milner (argued), Landrum, Shouse and Patterson, Lexington, Ky., for defendant-appellant.

Louis DeFalaise, U.S. Atty., Robert Trevey (argued), Lexington, Ky., J. Douglas Wilson, Crim. Div., Appellate Sec., Washington, D.C., for plaintiff-appellee.

Before ENGEL,* Chief Judge, and MERRITT and KRUPANSKY, Circuit Judges.

ENGEL, Chief Judge.

Defendant Mary Alice Wolf was convicted of three counts of traveling "in interstate or foreign commerce ... with intent that a murder be committed," 18 U.S.C. § 1952A, and one count of conspiring to commit that offense, 18 U.S.C. § 371. In an unpublished order filed March 15, 1988, we affirmed the conviction. On October 3, 1988, the Supreme Court, —— U.S. ——, 109 S.Ct. 39, 102 L.Ed.2d 18, granted Wolf's petition for a writ of certiorari, vacated our order and remanded for further consideration in light of the Court's recent decision in *Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). We now hold that admission of defendant's confession violated the prophylactic rule of *Roberson* and was not harmless beyond a reasonable doubt; therefore, we reverse and remand for a new trial.

I.

On the morning of May 27, 1986, Wolf appeared before a Jefferson County, Kentucky, District Court on two charges: theft by failure to make required restitution, for which she was being arraigned; and criminal possession of a forged instrument, for which she had already been arraigned and for which she had been appointed counsel. During the hearing, Wolf was asked if she had an attorney to represent her or if she wanted one appointed. Wolf requested an attorney, and the hearing judge ordered

* The Honorable Albert J. Engel assumed the duties of Chief Judge April 1, 1988.

that a public defense attorney be appointed to represent her on the theft charge.

After the hearing, Wolf was returned to the Women's Jail in Louisville, Kentucky, where she had spent the previous night. Later that day, while still in custody and before she had spoken to an attorney, Wolf was visited by two agents of the United States Bureau of Alcohol, Tobacco, and Firearms (ATF). At the outset of the meeting, the agents advised Wolf of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); she then signed a form stating she understood and wished to waive those rights. Wolf then confessed to her involvement in a scheme to kill Vicki Brashear, the wife of a former boyfriend, Alan Brashear.

On September 3, 1986, a federal grand jury in the Eastern District of Kentucky indicted Wolf and seven codefendants for offenses arising out of the scheme to murder Vicki Brashear. Wolf filed a pretrial motion to suppress her confession, arguing that it was involuntary and obtained in violation of the fifth and sixth amendments. Rejecting allegations that the confession was coerced, the district court denied Wolf's motion.

A recording of the confession was played to the jury once during Wolf's trial, and again at the request of the jury during its deliberations. The United States also relied upon the confession several times during its closing arguments. Wolf was subsequently convicted. On appeal, Wolf reasserted her claim that the confession was involuntary and obtained in violation of the fifth and sixth amendments. We rejected those claims and affirmed the conviction. After the Supreme Court vacated our order and remanded for further consideration, we requested supplemental briefing on the fifth amendment issue raised by *Roberson*. Wolf now urges us to reverse her conviction in light of the Supreme Court's holding in that case.

1. Although Wolf was convicted before *Roberson* was decided, the Supreme Court's decision controls our analysis of the fifth amendment claim Wolf has properly raised before our court. *Cf.*

## II.

A suspect who has "expressed his desire to deal with the police only through counsel [ ] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communications, exchanges or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). In *Roberson, supra,* the Supreme Court held that this prophylactic rule applies when a police-initiated interrogation following a suspect's request for counsel occurs in the context of an unrelated criminal investigation. 108 S.Ct. at 2096.[1]

We find that on the facts of this case *Roberson* was violated: Wolf invoked her fifth amendment right to counsel at the arraignment; she remained in custody and did not consult with her attorney from that time until after she gave her statement; and the ATF agents, not Wolf, initiated the interrogation that resulted in the statement.

The United States claims that defendant's request for counsel at arraignment did not trigger the protections of *Roberson* because it was not made during a custodial interrogation. In other words, the United States argues that while such a request invokes the sixth amendment right to counsel, it does not invoke the prophylaxis of having an attorney present to protect the fifth amendment right against self-incrimination. We reject this contention.

Our opinion in *Boles v. Foltz*, 816 F.2d 1132 (6th Cir.1987), in which we addressed a similar question for purposes of an *Edwards* analysis, provides some support for the claim raised by the United States. In *Boles,* our court held that a defendant's statement at arraignment that he had an attorney did not express "his desire to deal with the police only through counsel." *Id.* at 1135 (quoting *Edwards*, 451 U.S. at 484, 101 S.Ct. at 1885). Our court reasoned:

*Shea v. Louisiana*, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985) (rule of *Edwards* applies to convictions not final at time case was decided).

Although the law does not require a defendant to indicate whether a request for counsel is based on the fifth amendment privilege against self-incrimination or the sixth amendment right to be represented by counsel during judicial proceedings, *Michigan v. Jackson,* 475 U.S. 625 [, 106 S.Ct. 1404, 89 L.Ed.2d 631] ... (1986), where it is clear that the defendant's request is for something other than the presence of an attorney during interrogation the request should be so construed. *Boles,* 816 F.2d at 1135. Relying on *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987), we further noted that in determining whether a defendant has invoked his right to counsel, ambiguous statements are to be given broad interpretation, but the ordinary meaning of a defendant's statement is not to be disregarded. Considering the context in which the statement was made, we concluded that the ordinary meaning of Boles' statement was that he "wished to have his attorney present at the preliminary hearing." *Id.*

However, *Boles* is distinguishable from this case. In concluding that the ordinary meaning of Boles' statement was that he wanted to have his attorney present at an upcoming preliminary hearing, our court relied on evidence in the record that his statement was made as part of an exchange setting up that hearing. Here, there is no similar evidence that Wolf intended to limit her invocation of her right to counsel. At Wolf's arraignment, the prosecutor simply read the charge and Wolf requested appointed counsel. Given the absence of comparable evidence indicating that Wolf intended to limit her request to the invocation of the sixth amendment right to counsel, we resolve any doubts as to her intent in favor of protecting her Constitutional claim, *Jackson,* 475 U.S. at 633, 106 S.Ct. at 1409, and we find that her request at arraignment triggered the prophylactic rule of *Roberson.* *Cf. Cervi v. Kemp,* 855 F.2d 702, 706–07 (11th Cir.1988) (applying *Edwards* and holding that request for counsel made at arraignment is an assertion of fifth amendment right to counsel); *United States v. Fairman,* 813 F.2d 117 (7th Cir.1987) (invocation of right to counsel at arraignment triggers *Edwards* ).

### III.

■ The United States further argues that even if the trial court's decision to admit Wolf's confession violated *Roberson,* the violation does not require reversal because it was harmless error. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We agree with the United States that the harmless error standard of *Chapman* is the proper measure of our scrutiny. Appellate courts, including our own, have applied the harmless error analysis to confessions admitted in violation of the related rules of *Edwards* and *Miranda.* *See, e.g., Rose v. Engle,* 722 F.2d 1277 (6th Cir.1983) (admission of statement obtained in violation of *Edwards* not harmless error); *Christopher v. Florida,* 824 F.2d 836 (11th Cir.1987) (admission of statement obtained in violation of *Edwards* is reversible error). In doing so, these courts have recognized, either implicitly or explicitly that, while the admission of a truly coerced confession can never be harmless error, *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827, the erroneous admission of an otherwise voluntary confession obtained in violation of the prophylactic rules of *Miranda* and its progeny can be harmless. *See United States v. Charlton,* 565 F.2d 86, 92 (6th Cir.1977); *Christopher,* 824 F.2d at 847–48. We believe this approach is consistent with the Supreme Court's prohibition on the use of a harmless error analysis in cases where the right violated is so basic that the violation affects the likelihood of the defendant receiving a fair trial. *Cf. Chapman, supra; Gray v. Mississippi,* 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) (because violation of the right to an impartial jury goes to the very integrity of the legal system, *Chapman* harmless error analysis cannot apply) (plurality); *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) ("Without these basic protections a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no

criminal punishment may be regarded as fundamentally fair.").

Applying this analysis to the *Roberson* violation in this case, requires us to determine: (1) whether the confession, although unlawfully admitted, was otherwise voluntary; and if so, (2) whether admission was harmless error. *Cf. Christopher*, 824 F.2d at 846 n. 23; *Charlton*, 565 F.2d at 92–93. Because we conclude that the admission of Wolf's unlawful confession was not harmless error, we need not address the first question in this case.

To determine whether the error was harmless under *Chapman*, the question this court must ask is whether, absent the improperly admitted confession, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty. *United States v. Mahar*, 801 F.2d 1477, 1500 (6th Cir.1986). Because juries consider confessions extremely probative of guilt, some courts recognize that admission of an unlawfully obtained confession can rarely be harmless error. *See, e.g., Christopher*, 824 F.2d at 846 ("We have ruled the admission of an unlawful confession harmless only in limited instances, such as where there was in evidence at least one other lawful confession by the defendant."). Yet, if the record is clear that the jury's decision was not affected, we may find the error to be harmless. *Murphy*, 763 F.2d 202 at 209–10 (6th Cir.1985) (harmless error found where "circumstantial and corroborating evidence was massive").

■ After reviewing the entire record in this case, we cannot find that the admission of defendant's unlawfully obtained confession was harmless beyond a reasonable doubt. This case does not involve cumulative confessions. Instead, the United States argues that because its witnesses testified at trial that on three separate occasions Wolf had admitted her involvement in the scheme to murder Vicki Brashear, the improperly admitted confession was cumulative. The United States first relies on the testimony of a co-conspirator, who stated that Wolf had told him that she

wanted Vicki Brashear killed to get back at Alan Brashear. Wolf also allegedly asked him, apparently concerned that the "job" would not be done, "you mean I've wasted $6000 [an amount allegedly paid to 'gun for hire' Richard Savage to murder Vicki Brashear]?" Wolf denied making these statements. The United States next points to the testimony of Deborah Mattingly who lived with Richard Savage and testified that she had learned from Wolf that she repeatedly called Savage because she had hired him to kill Vicki Brashear. Wolf denied talking to Mattingly about Vicki Brashear, and testified that Mattingly was very upset because Wolf, who had become romantically involved with Savage, had "taken" him from Mattingly after a seven-year relationship. The United States also relies on a statement overheard by Timothy Cox, a friend of Wolf from high school, made by Wolf during a visit to his home. Cox testified that Wolf had told Alan Brashear, during a telephone conversation, "I know that you had nothing to do with trying to knock Vicki off; but if it comes to that, I will have to testify with Richard [Savage] against you." Again, Wolf denied making the statement and also denied talking to Cox about Savage. While our review of the entire record indicates that Wolf's credibility was at the very least suspect[2] we are not satisfied that the statements relied upon by the government, made by witnesses of dubious credibility and directly contradicted by Wolf's own testimony, would inevitably have led the jury to return a guilty verdict absent the unlawful confession.

The United States also argues, more generally, that the evidence presented at trial overwhelmingly establishes the details of the offenses charged. Again, evidence and testimony offered by Wolf contradicts much of the evidence presented by the government, and again this case turns in large part on the issue of Wolf's credibility. Yet, even if this were not so, the record clearly indicates that the now-outlawed confession played too important a role in this case to warrant a finding of harmless er-

---

**2.** Most indicative of Wolf's lack of credibility is the trial judge's finding, in his Memorandum Opinion and Order denying Wolf's motion to suppress the confession at issue, that her suppression hearing testimony was simply incredible.

ror. This is particularly so here, where the United States relied on Wolf's confession at least four times during its closing arguments and the jury specifically asked to rehear the recording of the confession during its deliberations.

Accordingly, we REVERSE and REMAND for a new trial consistent with this decision.

MERRITT, Circuit Judge, dissenting.

I believe my brothers have decided this case prematurely. By proceeding to a judgment in light of *Arizona v. Roberson,* — U.S. —, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) without remanding for further factfinding by the District Court that tried Mary Alice Wolf's case below, this Court has elided the peculiar difficulties of this case and rendered a decision which, *sub silentio,* significantly expands the rule of *Roberson.* Because I believe these difficulties require specific deliberation—and because I believe such deliberation requires further development of the record—I most respectfully dissent.

*Roberson* involved custody on one *state* charge and custodial interrogation about another possible *state* charge. Wolf, however, was in *state* custody on a state charge when she was interrogated about a possible and unrelated *federal* charge by *federal* agents. Even if there were no factual difficulties involved in deciding this case under *Roberson,* I think it is our job to examine this difference in the postures of the two cases—particularly since the appellant, on this remand, has asked us to. Instead, the majority extends the application of *Roberson* significantly beyond its facts, to a case involving state custody and federal interrogation. Whether or not such an extension is called for, it certainly requires some analysis.

That purely legal problem is not the only one that appears here, however. My brothers' opinion does not survey all of the facts that are established in this case, but consideration of them leads me to conclude that still further facts must be found before we can reach a fully reasoned decision in this case. The record reveals that, on April 18, 1986, Wolf was arraigned on state charges in the Jefferson County, Kentucky, district court. As the District Court below found in ruling on Wolf's motion to suppress, Wolf had voluntarily gone to the office of the United States Bureau of Alcohol, Tobacco and Firearms, also on April 18, 1986, in order to provide information about a jailbreak she claimed was planned by Richard Savage. (Savage, it was later learned, was one of her co-conspirators in the plot to kill Vicki Brashear.) Wolf failed to appear for her preliminary hearing in the state proceedings, and a warrant was issued for her arrest. She did appear at a second hearing, on May 27, 1986, and bond was evidently set at a figure she could not meet. As the majority notes, at this time Wolf requested that an attorney be appointed to represent her. She was then returned to the Louisville Women's Jail, where the interrogation that produced the statement which is involved in this appeal took place.

Thus far the facts are clear. What is not clear is whether we should construe the arrival of ATF agents at the jail as an initiation of interrogation. Of course, we know that Wolf herself voluntarily commenced her discussion with ATF agents well before she was placed in state custody on other charges. This strongly suggests to me that her discussions with federal officers developed independently of and prior to her being placed in state custody. If that were the fact, this case would raise yet another question about the application of *Roberson:* that is, can a defendant suppress a statement made in the course of a federal investigation that she herself initiated on the grounds that, in an unrelated state proceedings, she was later placed in state custody on state charges and requested an attorney in that matter? Two unresolved factual matters are directly pertinent to this question. First, the record presents us with apparently contradictory and inconclusive testimony on the question of whether one of the ATF agents appeared at her preliminary hearing on May 27, 1986 and sought to have her bond set high enough to keep her in custody. If in fact Wolf's custody did result in part from the actions of the federal agent, the facts of this case would be much closer to those of *Roberson* than is now apparent. And

*finally,* it appears from the record that Wolf may have been told by the correctional officer who came to her cell to bring her to meet with the ATF agents, that she had no choice about going to meet with them. If this were established as a fact, it would certainly be pertinent to a determination of whether the arrival of ATF agents at the jail should be considered an initiation of interrogation or merely the continuation of discussions begun before Wolf became subject to state custody.

I might be confident to make factual findings on this point if I did not remember that I am an appellate judge, commissioned to review factual findings of a trial judge who has had first-hand acquaintance with the case. And I might gloss over these problems altogether—as I contend the majority has done—if I did not feel that we should move very deliberately to reach a just result in this difficult case and to apply *Roberson* correctly. I regret that I must dissent.