UNITED STATES of America,
Plaintiff–Appellee,

v.

Billy HALL, Defendant–Appellant.

No. 89–5984.

United States Court of Appeals,
Sixth Circuit.

Argued March 8, 1990.

Decided June 18, 1990.

Rehearing Denied July 11, 1990.

Joseph M. Whittle, U.S. Atty., Terry Cushing, argued, Monica Wheatley, Scott

D. Cox, Asst. U.S. Attys., Louisville, Ky., for plaintiff-appellee.

E.W. Rivers, argued, Paducah, Ky., for defendant-appellant.

Before KENNEDY and RYAN, Circuit Judges, and SMITH, District Judge.[*]

GEORGE C. SMITH, District Judge.

Appellant Billy Hall appeals his conviction for mailing a threatening letter to the President and Vice President of the United States in violation of 18 U.S.C. §§ 871 and 872. Specifically, in June of 1988, Billy Hall was serving a sentence in the state penitentiary at Eddyville, Kentucky. Hall, along with other individuals, escaped from the penitentiary, was captured, brought back and arraigned in August of 1988. Hall was brought before the state court in the Lyon Circuit and a lawyer was appointed for him. Hall spoke with that attorney concerning his escape charges.

On October 28, 1988, a threatening letter signed by Hall and two other individuals[1] was sent to then President Ronald Reagan. The return address found upon the envelope was that of the Eddyville penitentiary. The White House mail room referred the letter to the Intelligence Division of the Secret Service in Washington, D.C. The Intelligence Division sent copies of the letter and envelope to the Louisville field office for further investigation. Special Agents Decicco and James Parker went to the state penitentiary and interviewed the subjects whose signatures appeared on the letter.

The agents interviewed Dennis McAninch who, after waiving his *Miranda* rights, admitted he signed the letter, helped to draft it, and addressed the envelope. He further stated that given the opportunity he would kill the President or Vice President.

Decicco and Parker also interviewed Hall. According to Decicco, he read Hall his *Miranda* rights. Thereafter, Hall stat-

---

* The Honorable George C. Smith, United States District Court for the Southern District of Ohio, sitting by designation.

1. Charged in the indictment were Dennis O'Neil McAninch and Thomas Edward Davidson, Jr. who are not a part of this appeal.

ed that he personally had written the letter. He stated that he meant what he had said and that he would kill the President and Vice President if he had the opportunity. Hall also gave handwriting samples. The trial in this matter commenced on April 12, 1989.

The first witness at the trial was Agent Decicco. Decicco testified regarding the interview with McAninch. After finishing his testimony regarding McAninch, Decicco testified that he next talked to Billy Hall. Hall immediately objected to Decicco testifying to any statements, admissions, or evidence given by Hall during the interview.

A conference outside of the hearing of the jury ensued where it was explained to the court that Billy Hall had escaped from the penitentiary in Eddyville, Kentucky, but had been captured and returned in July. It was further explained that a lawyer had been appointed for Billy Hall on those charges. Hall specifically objected to any statements made during the interview with Decicco and Parker, because he already had been appointed counsel on the state charge. Therefore any statements he gave during that interview had to be suppressed. It is not in dispute that Hall was not questioned about the escape charge during the interview on November 8, 1988. The only questioning that took place was that regarding the threatening letter sent from the penitentiary. The district court conducted a hearing whereby it was to be determined: (1) whether Hall had been given his *Miranda* rights; and (2) whether or not he knowingly and voluntarily waived those rights.

Decicco indicated that he did not know when he interviewed Billy Hall that a lawyer had been appointed for him. Decicco testified that he advised Hall of his *Miranda* rights to have an attorney, and the possibility that one could be appointed for him. He indicated that while the Secret Service did have written waiver forms, he did not have Hall or the other two individuals sign the forms. However, according to Decicco, Hall spoke freely and voluntarily without being coerced in any way by either agent.

Agent Parker testified that he questioned Hall about his role regarding the letter and he too read to Hall his *Miranda* rights. He explained to Hall that he had a right to an attorney, and that if he could not afford one, an attorney would be appointed for him. Parker indicated that Hall did not request counsel. Parker did however testify that within Hall's report was information that an attorney had been appointed for Hall on the escape charge.

Hall testified before the Court and explained his escape charge. He indicated that he had been appointed an attorney for the escape charge and that he had talked to his attorney in regard to that charge. Hall indicated that he had talked to counsel regarding the escape charge before being interviewed by these Agents. He also indicated that the agents did not ask him whether he had an attorney and had they asked, he would have availed himself of an attorney. Hall later testified, however, that the Agents told him he could have an attorney. Hall indicated that he made a request. According to Hall, Decicco and Parker ignored his request. Thereafter, Hall answered a couple of the agent's questions and indicated that he might know something about the letter. He gave a handwriting sample.

The trial court found that Hall waived his Miranda rights. The court noted that at the time of the interrogation, counsel had been appointed for Hall. Nevertheless, the statements of Hall were admitted into evidence and the jury returned a verdict of guilty. The district court sentenced Hall to sixty (60) months to be served consecutively to any term of imprisonment currently being served. Defendant was also given three years supervised release.

Hall appeals arguing that his statements made to Agents Decicco and Parker were in violation of *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), which also has recently been followed in *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989). This appeal likewise centers around whether the admission of defendant's statement could invoke harmless error. *Chapman v. California*, 386

U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). For the foregoing reasons, I find that Hall's statements were not in violation of *Roberson*. Since *Roberson* has not been invoked, a waiver could be obtained. The District Court properly found that defendant Hall voluntarily waived his *Miranda* rights, and appellant has not brought that issue to this appeal. Therefore, neither the issue of whether a valid waiver was obtained nor harmless error needs to be addressed. However, it should be noted that if this Court were to address the issue of harmless error, I would have found that Hall's statements would not have been harmless error as found in *Chapman*. The Court AFFIRMS the District Court.

■ In *Edwards v. Arizona*, 451 U.S. 477, 484–485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981), the Supreme Court held:

> [An] accused, ..., having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.

In *Arizona v. Roberson,* the Supreme Court held that this prophylactic rule applies when police-initiated interrogation following a suspect's request for counsel occurs in the context of an unrelated criminal investigation. 486 U.S. at 682, 108 S.Ct. at 2098. Defendant Hall contends that the circumstances which surround his admission following questioning by Decicco and Parker are identical to that of *Roberson* [2] and therefore, his conviction was in violation of his fifth amendment right against self-incrimination. On this I cannot agree.

■ The Supreme Court in *Roberson* explained that the *Edwards* rule protects against the inherently compelling pressures of custodial interrogation suspects who feel incapable of undergoing such questioning without the advice of counsel. A presumption is created that any subsequent waiver of the right to counsel at the authorities behest was coercive and not purely voluntary. Moreover, it provides clear and unequivocal guidelines that inform the police and prosecutors with specificity what they may do in conducting custodial interrogation, and that inform the courts under what circumstances statements obtained during such interrogation are not admissible. 486 U.S. at 680–682, 108 S.Ct. at 2097–2098.

*Roberson* was concerned with coercive custodial interrogation by authorities where the suspect has not had the ability to speak to counsel, because, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." 486 U.S. at 686, 108 S.Ct. at 2100. Thus, the Supreme Court disagreed with the contention that a fresh set of *Miranda* warnings would "reassure" a suspect who had been denied counsel would have his rights remain untrammeled, "especially in a case such as this, in which a period of three days elapsed between the unsatisfied request for counsel and the interrogation about a second offense ..." *Id.* Significant within the *Edwards* extension in *Roberson* was the individual being interrogated had not yet had the opportunity to speak to counsel and remained in custody. A short period of three days for which the individual remained in custody would not alleviate the coercive pressure surrounding a subsequent interrogation about an unrelated crime, because the accused had not yet had the advice and consultation of a lawyer. The presumption which is created in *Roberson* is that until the individual is afforded the opportunity to speak to counsel, any subsequent *Miranda* warning is insufficient to overcome the pressures cre-

---

**2.** In *Roberson,* the defendant was arrested at the scene of a burglary, advised of his *Miranda* rights, and immediately indicated that he "wanted a lawyer before answering any questions." Three days later while still in custody and still without talking to a lawyer, a different officer, unaware that respondent had earlier requested counsel who had not yet been provided, advised him of his rights and interrogated him about a different burglary. He obtained an incriminating statement about that crime.

ated by the custodial nature of the situation. That along with the brief period of time which elapsed between the original request and the subsequent unrelated interrogation should not relieve the authorities of the obligation to refrain from questioning until counsel has been presented and the suspect has had the ability to confer with his or her attorney. Those facts and concerns do not appear herein.

Nor do these facts support the holding that this Court recently pronounced in *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989). In *Wolf*, the defendant was brought before a Kentucky District Court on state charges of theft and criminal possession of a forged instrument. At her arraignment, Wolf requested an attorney. Thereafter she was returned to the Women's Jail. Later that same day and before she had spoken to her requested counsel, two agents of the United States Bureau of Alcohol, Tobacco, and Firearms appeared at the Women's Jail to question the defendant. These agents read the *Miranda* warnings to her, obtained a waiver, and she subsequently confessed her involvement in a scheme to kill the wife of her former boyfriend. This Court found that *Roberson* protected Wolf from this second interrogation, even though the defendant was being questioned for two unrelated state and federal charges.

Quoting directly from the *Wolf* decision, we clearly stated:

[W]e find that on the facts of this case *Roberson* was violated: Wolf invoked her fifth amendment right to counsel at the arraignment; she remained in custody and did not consult with her attorney from that time until after she gave her statement; and the ATF agents, not Wolf, initiated the interrogation that resulted in the statement. *Id.* at 1322.

Defendant Wolf requested counsel, was returned to jail, and was interrogated the same day about an unrelated federal investigation. Wolf had not spoken to counsel. Therefore, the concerns which were espoused in *Roberson* clearly appeared within *Wolf*. *Miranda* waivers under those circumstances have presumptively been held to be coercive, and not to be given effect. However, neither *Wolf* nor *Roberson* has been violated within this case.

Defendant Hall was captured and returned to the Eddyville penitentiary in August of 1988. At his arraignment, an attorney was appointed for the defendant. Hall spoke to his attorney concerning those charges. Three months later, a threatening letter was sent from the penitentiary to the President of the United States. Two Secret Service Agents questioned Hall about his involvement. The District Court held a hearing and specifically found that Hall waived his *Miranda* protection. Hall admits he answered a few questions and may have known something about the letter. Hall remained in jail, but he was there because he was already serving a prior sentence. Hall was no stranger to the state penitentiary. In fact, Hall was not "in custody" as that term has been used in the context of *Edwards* and *Roberson*. One could readily argue that Hall was more comfortable within the surroundings in which he was interrogated than the two Secret Service agents.

Hall would have this Court set aside the District Court's finding of guilty because he had an attorney for the state escape charges. Hall would have us ignore his waiver of his *Miranda* protection. Taking Hall's argument to its logical conclusion, because he had an appointed attorney on an unrelated state charge, any future waiver of his *Miranda* warnings would be ineffective. That would be true, even though Hall had spoken to his appointed counsel regarding those charges. Hall would have this Court adopt an approach, that once a defendant has had counsel for any other criminal activity, whether or not he was ever formally charged or convicted, the authorities were precluded from speaking to him about new activity without his counsel's presence. This would be the case, even if Hall waived all of his rights to counsel and self-incrimination and even if he thereafter voluntarily confessed to his involvement. In essence, Hall would have us adopt a rule which would forever deny the use of a proper *Miranda* warning and subsequent waiver on any charge or inter-

rogation, after an individual had an attorney. That would be so no matter what the time frame was between the activities or whether or not the individual had ever spoken to his counsel. This clearly is not the intent of the *Edwards* protection espoused in *Roberson*. This Court cannot extend the protection that far. To extend the protection as Appellant wishes would create a situation not contemplated above.

Hall invoked his fifth amendment right to counsel at his arraignment on the escape charges. The only reference within the record to establish that an attorney was appointed for Hall following his arraignment comes in transcript evidence of Hall himself held at his suppression hearing. Joint App. at 16. It is not clear what right Hall was asserting at his arraignment. However, this Court in *Wolf* held that where the record does not indicate that the defendant intended to limit their request for counsel to only that of the sixth amendment, any doubt as to what right was invoked had to be resolved in favor of the defendant. *Id.* at 1323, citing *Cervi v. Kemp*, 855 F.2d 702, 706–707 (11th Cir. 1988) (applying *Edwards* and holding that request for counsel made at arraignment is an assertion of fifth amendment right to counsel); *United States v. Fairman*, 813 F.2d 117 (7th Cir.1987) (invocation of right to counsel at arraignment triggers *Edwards*). Therefore, Hall's fifth amendment right against self-incrimination was protected as to the underlying state charge of escape. But as has been established, neither *Edwards* nor *Roberson* can be interpreted within this appeal to grant to Hall such a blanket protection continuing *ad infinitum*. The facts and circumstances that were the subject of those cases clearly do not appear herein. To have Hall's waiver of his *Miranda* protection overturned on these facts and circumstances would not only do injustice to the principles that are being protected in *Edwards* and *Roberson*, but would also remove an individual's ability to waive his fifth amendment privilege merely because at some past point he had counsel. And that would be the case even though the individual had fully conferred with his counsel regarding that previous activity. This Court cannot reach that result. Accordingly, the judgment of the District Court is AFFIRMED.

KENNEDY, Circuit Judge, concurring.

Although the concerns of *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989) and *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) are present to a lesser degree in this case, defendant was in custody. He had requested an attorney on another pending charge and one had been provided. He thus falls under the stricture of *Roberson*. The fact that he had been in custody for a substantial length of time may or may not have increased the "pressures of custodial interrogation." Most importantly, *Roberson* was intended to provide a bright line for members of the law enforcement community as to when they could interrogate suspects and when they could not. The bright line rule is for the benefit of the courts as well.

I concur in the judgment of the court since I believe the admission of the confession was harmless. The statute under which defendant was convicted makes it a crime to mail a letter threatening the President or Vice President of the United States. The handwriting expert testified that "it's a strong probability which is virtually certain that he [defendant] wrote it." The fingerprint expert testified that 22 of the 27 fingerprints on the letter were defendant's. Further, Hall's name appears as one of the signatures to the letter and his first name in the contents of the letter. "[A]bsent the improperly admitted confession, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *Wolf*, 879 F.2d at 1324.

RYAN, Circuit Judge, concurring separately.

I concur in the judgment affirming the defendant's conviction and write separately to emphasize that *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989), are totally distinguishable from this case and, consequently,

the rules announced in those cases are inapplicable here.

## I.

The rule of *Roberson* is that an accused under arrest and in police custody for a serious offense, who, after being warned under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), invokes a fifth amendment right to counsel by expressing a desire to deal with the police only through counsel, may not be interrogated further until counsel has been made available to him unless he initiates further communication with the police. If he is further interrogated before counsel has been made available to him, there is a presumption that "any subsequent waiver [of the *Miranda* right to remain silent] has come at the authorities' behest, and not at the suspect's own instigation, and is itself the product of the 'inherently compelling pressures' [of the custodial interrogation] and not the purely voluntary choice of the suspect." *Arizona v. Roberson*, 486 U.S. 675, 681, 108 S.Ct. 2093, 2098, 100 L.Ed.2d 704 (1988).

The *Roberson* rule is an extension of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and was fashioned by the Supreme Court in the context of facts so totally different from the facts of this case as to make it evident that *Roberson*'s rule was not intended to apply in a case of the kind before us.

The first important distinction between *Roberson* and this case is the differing circumstances in the two cases in which the right to counsel was invoked. The circumstances are important because they emphasize the constitutional significance of the difference between invoking a fifth amendment rather than a sixth amendment right to counsel—a distinction the Supreme Court emphasized in *Roberson*. Immediately after Roberson was arrested on suspicion of burglary, he was given *Miranda* warnings by the arresting officer. Roberson responded that he "wanted a lawyer before answering any questions"; thereby invoking a fifth amendment right to counsel. Counsel was not provided to Roberson before he was interrogated by the police on another matter three days later.

Hall, on the other hand, who was in court being arraigned on a state escape from custody charge, responded affirmatively to the court's inquiry whether he wished to be represented by counsel for the escape from confinement prosecution; thereby invoking a sixth amendment right to counsel.

When Roberson invoked his fifth amendment right to counsel he was an arrestee who had been in police custody for only a few moments. When Hall invoked his sixth amendment right to counsel he was in court, and participating in a judicial proceeding. He had been in continuous custody as a sentenced prisoner in a Kentucky state penitentiary for years, was at liberty as an escapee for a month, and had been returned to prison approximately three months prior to his arraignment. Hall, unlike Roberson, did not, when invoking his sixth amendment right to counsel or at any other time, indicate any desire to deal with the police only through counsel.

Roberson was interrogated by state officials on an unrelated offense within three days after indicating, explicitly, a desire to deal with the police only through counsel. Hall was interrogated by federal authorities on an unrelated offense some three months after the appointment of counsel in the state court arraignment proceeding during which he said nothing about his willingness to speak to the police. Whereas Roberson's fifth amendment right to consult an attorney had not been honored, counsel had been appointed for Hall and he had met with his counsel months prior to the challenged interrogation.

The factual differences between *Roberson* and this case are substantial; so substantial that it is evident that the rule fashioned for *Roberson*'s facts is inapplicable here.

## II.

Neither is this case controlled by *United States v. Wolf*, 879 F.2d 1320 (6th Cir. 1989). In *Wolf*, the majority of a divided panel was unimpressed by the importance

of the distinction between a fifth amendment and a sixth amendment right to counsel the Supreme Court emphasized in *Roberson*. The majority observed, simply, that although Wolf's counsel was appointed at an arraignment, since there was an absence of "evidence indicating that Wolf intended to limit her request to the invocation of the sixth amendment right to counsel, ... doubts as to her intent [would be resolved] in favor of protecting her constitutional claim...." 879 F.2d at 1323. Whatever the merits of the *Wolf* court's treatment of the fifth and sixth amendment right to counsel distinction and its extension of the rule announced in *Roberson*, *Wolf*'s rule is not controlling here because the facts of the two cases are significantly different.

Wolf had been arrested on May 27, 1986. She was held in jail overnight and the next morning appeared in court for arraignment on a failure to make restitution charge. Asked by the court whether she wished to have counsel appointed to represent her, she replied that she did. The court immediately appointed the public defender. Later that day, and before consulting with counsel, Wolf was visited by federal Alcohol, Tobacco, and Firearms agents who advised her of her rights under *Miranda, supra*. Wolf signed a form stating that she wished to waive her *Miranda* rights, and then confessed to participation in a scheme to kill her former boyfriend's wife.

The court recognized that *Roberson* could be applicable to the case only if the facts in *Wolf* indicated that Wolf's request for counsel amounted to an expressed desire "to deal with the police only through counsel." *U.S. v. Wolf*, 879 F.2d at 1322 (quoting *Edwards v. Arizona*, 451 U.S. 477, 484, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981)). The court found such an intent because of the ambiguity of the evidence about Wolf's intent when she asked that counsel be appointed at arraignment and because she was reinterrogated by police authorities within twenty-four hours after invoking her right to counsel and before she had an opportunity to consult with an attorney.

In this case, there is no ambiguity about whether Hall expressed an intention "to deal with the police only through counsel." There is no evidence whatever of such an intention. In addition, whereas Wolf was interrogated within twenty-four hours of being placed in custody and invoking her right to counsel, Hall was interrogated and waived his *Miranda* rights three months after counsel was appointed for him and while in the custody of state correctional authorities as a sentenced inmate. Hall was interviewed where he lived. Wolf had not consulted with counsel. Hall had consulted with his appointed counsel.

The rule announced in *Roberson*, derived from *Edwards* and applied in *Wolf*, and for which the defendant relies on here, is not applicable unless Hall's sixth amendment request for counsel to represent him in the escape from confinement made three months before the challenged *Miranda* waiver, and for proceedings that had long since terminated, can reasonably be construed as an "expressed desire to deal with the police only through counsel." *Edwards, supra*. The facts demonstrate clearly that it cannot. Therefore, the *Roberson* rule is inapplicable to this case.

Moreover, even if by some stretch of the imagination one might conclude that the rules of *Roberson* and *Wolf* are controlling here, the facts of this case demonstrate that when Hall expressly waived his *Miranda* rights when being interrogated by Officer Decicco on November 8, 1989, three months after consulting with appointed counsel in the state case, the presumption that his waiver was "itself the product of the 'inherently compelling pressures'" of his custodial interrogation was rebutted.

I take the trouble to concur separately not only because I am firmly convinced that *Roberson* and *Wolf* are totally inapplicable to this case, but also because I am unable to say that if *Roberson* and *Wolf* were violated, the resultant error in admitting Hall's incriminating statement was harmless beyond a reasonable doubt. There was no such error however and,

therefore, I concur in the court's judgment of affirmance.