941 F.2d 1210
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond Lewis DIXON, Defendant-Appellant.
 No. 90-3734.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1991.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant, Raymond L. Dixon appeals the district court's denial of his motion to suppress certain incriminating statements made by defendant to a federal officer when he was transported from his home in Fostoria, Ohio, to Toledo, Ohio, on October 6, 1989, after being arrested on federal charges of possession of cocaine and possession of firearms. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 On February 16, 1989, a team of state, county and municipal law enforcement officers executed a state search warrant at 520 Lynn St., Fostoria, Ohio, a two-story frame home rented by defendant. Defendant was present at the time the search warrant was executed. The search resulted in the seizure of various firearms, some loaded; a plastic bag containing 18 rocks of crack cocaine; $460 in U.S. currency; and photographs of defendant posing with firearms and large amounts of U.S. currency. The officers also discovered a crack-smoking pipe, 3 boxes of baking soda, a hand-held gravity scale and a functional police scanner with all ten channels programmed to various police frequencies in the northwestern Ohio area.
 
 
 3
 The officers advised defendant of his Miranda[1] rights. He then told the officers that he lived in the house with his girlfriend and her two children. He also stated that all of the property belonged to him. Dixon was arrested and was subsequently indicted by a state grand jury for drug possession and possession of a firearm while under a disability. He was appointed counsel.
 
 
 4
 Because one of the weapons retrieved on February 16, 1989 was a sawed-off shot-gun, and because he knew defendant had a prior felony conviction the state officer notified the Toledo office of the Bureau of Alcohol, Tobacco and Firearms ("ATF") of the seizure. It was later agreed that the state charges would be dropped once defendant was charged in federal court.
 
 
 5
 On September 20, 1989, a federal grand jury in Toledo returned a four count indictment against the defendant charging possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); felon in possession of a firearm, in contravention of 18 U.S.C. § 922(g)(1); and use of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). A warrant was issued for Dixon's arrest.
 
 
 6
 On October 5, 1989, ATF agents Steven Zeller and Christopher Tardio arrested defendant in Fostoria. At the time of this arrest the ATF agents believed that the state charges had been dismissed. In fact, the state dismissal occurred at some later point. Agent Tardio advised defendant of his Miranda rights upon arresting defendant. Dixon was transported from Fostoria to Toledo in Tardio's vehicle. During the sixty mile journey, defendant told Tardio that the guns and drugs found in his house on February 16, 1989, belonged to him. He also stated that he was selling the rocks of crack for $10 a piece and kept approximately 6 ounces on hand at any one time, selling that amount in a month. Questioning ceased after defendant invoked his right to counsel.
 
 
 7
 Defendant filed a motion to suppress the statements made on October 5, 1989, which the district court denied. A jury trial was held on May 15, 1990. At trial all of the above evidence, including defendant's statements to the ATF agents on October 5, 1989, was introduced. Dixon was found guilty of all four counts and was later sentenced.
 
 
 8
 On appeal, defendant claims that the district court's denial of his motion to suppress statements of October 5, 1989 violated his fifth and sixth amendment rights to counsel.
 
 II.
 A.
 
 9
 In Michigan v. Jackson, 475 U.S. 625 (1986) the Supreme Court held that if police initiate an interrogation after a defendant has asserted his right to counsel at an arraignment on a similar proceeding, any waiver of defendant's right to counsel for that interrogation is invalid. Id. at 636. That the police were unaware of the fact that defendant had been arraigned and asserted his right to counsel is irrelevant. Id. at 634. In the instant case, defendant was arraigned on the state charges, at which time he had counsel to represent him. Thus, at that time his sixth amendment right to counsel attached.
 
 
 10
 The government attempts to distinguish Jackson on the grounds that in Jackson there was only one prosecution, whereas in the instant case there were two, one state and one federal, and that the post-arraignment questioning was directed only at the federal charges where the sixth amendment right to counsel had not yet been invoked. We find this distinction unavailing.
 
 
 11
 The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State.... Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent. Maine v. Moulton, 474 U.S. 159, 176 (1985).
 
 
 12
 What is operative is the confrontation between the accused and the police; the constitutional right is not conditioned upon the agency bringing the charge. Thus we conclude that the government "must have known" that its agent was likely to elicit incriminating statements from defendant in the absence of counsel during the sixty mile trip from Fostoria to Toledo, especially since the questioning was directed at the same incident on which the state charges were based. See Moulton, 474 U.S. at 176 n. 12.
 
 
 13
 We therefore find that defendant's statements of October 5, 1989 were obtained in violation of defendant's sixth amendment right to counsel since defendant had already invoked the right in the state case and the federal charges were based on the same incident. Thus, defendant's waiver was invalid and the statements should have been suppressed.
 
 B.
 
 14
 Notwithstanding this holding, we nonetheless conclude that in this case the admission of the statements made on October 5, 1989 was harmless error. See Chapman v. California, 386 U.S. 18, 23 (1967). The Supreme Court has most recently determined that the harmless error analysis applies to coerced confessions. Arizona v. Fulminante, 59 U.S.L.W. 4235 (March 26, 1991). In Fulminante, the court noted that as Chapman made clear, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Fulminante, 59 U.S.L.W. 4235, 4239 (quoting Chapman, 386 U.S. at 24). The reviewing court must determine whether the state has met its burden of demonstrating that the admission of the confession did not contribute to the defendant's conviction. Fulminante, 59 U.S.L.W. at 4239 (citation omitted). A de novo standard of review is to be utilized. Id.
 
 
 15
 Prior to Fulminante, this court has applied the harmless error analysis to confessions admitted in violation of Edwards v. Arizona, 451 U.S. 477 (1981) and Miranda. See United States v. Wolf, 879 F.2d 1320, 1323 (and cases cited therein). To determine whether the error was harmless under Chapman, we must consider: "(1) whether the confession, although unlawfully admitted, was otherwise voluntary; and if so, (2) whether admission was harmless error." Wolf, 879 F.2d at 1324. Here the magistrate and the district court made a finding of fact that the defendant's statements of October 5, 1989, were voluntary. We find nothing in the record to indicate that this finding was clearly erroneous.
 
 
 16
 Regarding the second prong, the question is whether "absent the improperly admitted confession, it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." Wolf, 879 F.2d at 1324. In this case there was a substantial amount of evidence in defendant's house associated with drug trafficking. This evidence clearly suggests that Dixon was running a crack operation from his house. Moreover, only two portions of defendant's statement admitted through agent Tardio were not cumulative. In Dixon's February 16, 1989 statement, which defendant has not challenged on appeal, he admitted that all the guns and drugs were his and that he lived in the house. Thus, when viewed in the overall context of the government's case, defendant's statements to Tardio on October 5, 1989 played a relatively minor role. We therefore conclude beyond a reasonable doubt that the jury would have easily found that Dixon was a dealer in crack cocaine solely from the physical evidence and the defendant's February 16, 1989 acknowledgement that it belonged to him; and that he possessed firearms in violation of federal law. AFFIRMED.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)