59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Lee ALLEN, Defendant-Appellant.
 No. 94-5585.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges, and JOINER, District Judge.*
 Per Curiam.
 
 
 1
 Defendant-Appellant Michael Lee Allen appeals his jury conviction and sentence for maliciously damaging and destroying property used in interstate commerce, in violation of 18 U.S.C. Sec. 844(i), resulting in the death of two firefighters.
 
 I.
 
 2
 On January 21, 1993, a federal grand jury returned a one count indictment against Defendant Michael Lee Allen. The indictment charged that on or about December 26, 1992, Allen maliciously damaged and destroyed by means of fire, the Pilgrim Hope Baptist Church in Shelby County, Tennessee, said church being used in interstate commerce, resulting in the deaths of firefighters J.D. Hill and Joseph Boswell. Both firefighters were admitted to the Medical Center with third-degree burns to 75% of their bodies. Hill died on January 4, 1993, and Boswell died on January 11, 1993. On September 17, 1993, a jury convicted Allen, and he was sentenced to life imprisonment.
 
 II.
 
 3
 On appeal, Allen has raised eleven issues.[1] This court has reviewed the trial record and the presentence report, and we find that the lower court made no legal errors and that the jury's verdict was supported by the weight of the evidence. Because there were no errors in Allen's conviction or sentence, there is no reason for this court to address specifically each error charged by Allen, but we will briefly address Allen's claims that his motion to suppress was erroneously denied and that the lower court improperly applied the Sentencing Guidelines.
 
 III.
 Motion to Suppress
 
 4
 Allen argues that it was error for the court not to suppress his statements made to the police on the night of his arrest. On appeal, the findings of fact relevant to a motion to suppress are reviewed for clear error and the conclusions of law are reviewed de novo. United States v. Duncan, 918 F.2d 647, 650 (6th Cir. 1990), cert. denied, 500 U.S. 933 (1991).
 
 
 5
 "[O]nce an individual in custody invokes his right to counsel, interrogation 'must cease until an attorney is present'; at that point, 'the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning."' Minnick v. Mississippi, 111 S. Ct. 486, 489 (1990) (quoting Miranda v. Arizona, 384 U.S. 436, 474 (1966)). Thus, police may not continue questioning when an accused in custody has "clearly asserted his right to counsel." Id.
 
 
 6
 Minnick, relying on Miranda and Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), found that
 
 
 7
 when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. Further, an accused who requests an attorney, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
 
 
 8
 Minnick, 111 S. Ct. at 489 (internal citations and quotations omitted). This rule is intended "'to prevent police from badgering a defendant into waiving his previously asserted Miranda rights."' Id. (quoting Michigan v. Harvey, 494 U.S. 344, 350 (1990)).
 
 
 9
 According to Allen, during his interrogation he attempted to invoke his right to counsel, but the police, nevertheless, continued their questioning. We believe that Allen mischaracterizes the facts of this case. In response to Allen's motion to suppress the government submitted a transcript of Allen's statement to the police. See J.A. 45-58. From that transcript, it is clear that Allen was advised of his rights and verbally indicated that he understood those rights. See J.A. at 45. At a later point, after the police began their questioning, Allen stated, "I don't know if I should really be talking now, I mean without a lawyer and everything .... [I]t's obvious that, you know, I'm suspected of it." J.A. at 45 Officer Kilday responded, "All right. So are you telling us right now that you want to invoke your right to counsel and you don't want to talk to us about this?" Id. Allen then asked whether he could speak to the officer off the record; Kilday informed him that he could not do that, as the audio tape was for the protection of both Allen and the police. Id.
 
 
 10
 After being told that if he made a statement, it would have to be taped, Allen said "I'm gonna tell you about it.... Might as well." Kilday then responded, "Well, okay, alright, okay. Are you telling me that you want to go ahead and answer questions?" Allen responded, "Yeah." Id.
 
 
 11
 From there, the interrogation proceeded as follows:
 
 
 12
 Allen: I was homeless.... The next morning there was a fire.
 
 
 13
 Kilday: Okay. You're going to tell us about the fire?
 
 
 14
 Allen: Umm ... I'm gonna waive my right on that.
 
 
 15
 Kilday: You're gonna what?
 
 
 16
 Allen: This ..., you know, I mean that's uh ...
 
 
 17
 Kilday: Okay. Let me make sure I understand you. Are you saying you don't want to talk to us anymore about the fire? Tell me exactly what you said. I want to make sure I understand.
 
 
 18
 Allen: I ... I guess for now that's it, I mean, until I consult a lawyer or something.
 
 
 19
 Kilday: Okay. So you don't want to make anymore statements about this investigation into this fire until you consult with an attorney, is that right?
 
 
 20
 Allen: I don't know, if ya'll like ask me specific questions then I'll probably answer them.
 
 
 21
 Kilday: Well, okay. That's fine but that ain't how it works, okay. It's not either or...I need to know for sure, right now. We'll be glad to ask you specific questions, but I want to know right now -- I have to know right now, do you want to talk to us and answer our questions?
 
 
 22
 * * *
 
 
 23
 Allen: Alright man, I'll ...
 
 
 24
 Kilday: Huh?
 
 
 25
 Allen: I'm going to answer the questions.
 
 
 26
 Kilday: You are going to answer the question?
 
 
 27
 Allen: Yeah.
 
 
 28
 Kilday: Do you want an attorney present?
 
 
 29
 Allen: No.
 
 
 30
 J.A. at 47-48. From there, Allen went on to tell the officers of his presence at the church prior to the fire and his involvement with the fire.
 
 
 31
 Where, as here, a defendant makes an ambiguous statement regarding his right to counsel, the court must determine whether the defendant invoked his right to counsel by giving the statements a broad interpretation, "but the ordinary meaning of the defendant's statement is not to be disregarded." United States v. Wolf, 879 F.2d 1320, 1323 (6th Cir. 1989). We do not believe the lower court erred in finding that "[t]he ordinary meaning of Mr. Allen's word would be disregarded if the Court failed to recognize a valid waiver of his right to counsel. Although Mr. Allen expressed a desire to consult an attorney the pronouncement was equivocal." J.A at 65. Quoting the Eleventh Circuit's opinion in United States v. Mendoza-Cecelia, 963 F.2d 1467, 1472 (11th Cir.), cert. denied, 113 S. Ct. 436 (1992), the district court found that
 
 
 32
 [w]hen a [suspect] makes an equivocal request for an attorney during a custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one subject only. Further questioning thereafter must be limited to clarifying that request until it is clarified. Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates Miranda.
 
 
 33
 Id. at 66 (internal quotations omitted). If a defendant's statement is not an unambiguous or unequivocal request for counsel, the interrogation need not stop. United States v. Davis, 114 S. Ct. 2350, 2356 (1994).
 
 
 34
 The lower court found that Officer Kilday properly proceeded after Allen's equivocal request for counsel, and that any incriminating statements were made after it was clear that Allen waived his right to counsel. We agree.
 
 Application of the Sentencing Guidelines
 
 35
 A court's factual findings in relation to the application of the Sentencing Guidelines are subject to a deferential "clearly erroneous" standard of review. See 18 U.S.C. Sec. 3742(d) (1988); United States v. Garner, 940 F.2d 172, 174 (6th Cir. 1991). Legal conclusions regarding the Guidelines, however, are reviewed de novo. Garner, 940 F.2d at 174. A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985).
 
 
 36
 The lower court's starting point in computing Allen's sentence was USSG Sec. 2K1.4(c)(1), which states, "If death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above." USSG Sec. 2K1.4(c)(1) (1994). Allen argues that the lower court erred in determining that the most analogous guideline from Chapter Two was USSG Sec. 2A1.1 (first degree murder).
 
 
 37
 This circuit has not specifically addressed the question of which guideline to apply when death results from a violation of 18 U.S.C. 844(i), and we need not reach the issue in the instant case. Allen's PSR, which was adopted by the lower court, correctly found that Allen was a career offender under USSG Sec. 4B1.1. See J.A. at 22. Although the district court did not explicitly sentence Allen as a career offender, the court did note Allen's career offender status in declining to consider downward departures. On appeal, we affirm Allen's life sentence on this ground.
 
 IV.
 
 38
 Wherefore, Allen's conviction and sentence are AFFIRMED.
 
 
 39
 BATCHELDER, Circuit Judge, concurring.
 
 
 40
 I write separately only to make clear what is implicit in the majority's treatment of the sentencing issue. Under the circumstances of this case, it is unnecessary to choose the most analogous guideline as U.S.S.G. Sec. 2K1.4(c)(1) instructs us to do: (1) because Allen was correctly found to be a career offender; (2) because the criminal history category for career offenders is set at Category VI; and (3) because the offense statutory maximum for the offense of conviction, 18 U.S.C. Sec. 844(i), is life imprisonment or death. Section 4B1.1 of the Guidelines requires that if the offense level for the offense of conviction as calculated under the Guidelines is lower than the Offense Statutory Maximum as set forth in the table in Sec. 4B1.1, the greater offense level is to be used. The table requires an offense level of 37 for an offense of conviction which carries a statutory maximum of life imprisonment. Therefore, even if defendant Allen's offense level were calculated without regard to Sec. 2K1.4(c)(1), the Career Offender provisions would require that the sentence be imposed on the basis of an offense level of 37. The sentencing range for an offense level of 37 and criminal history category VI is 360 months to life. Because Allen is a career offender, the district court did not err in sentencing Allen to life imprisonment.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 In his appellate brief, Allen assigns the following errors: (1) the lower court erred in denying Allen's motion for change of venue; (2) the lower court erred in denying Allen's motion to suppress statements made to the police; (3) the lower court erred in denying Allen's motion to strike surplusage; (4) the lower court erred in allowing the admission of photographs of the two firefighters who were killed; (5) the lower court erred in admitting evidence of phone calls that Allen made from the church to various phone sex telephone numbers; (6) the lower court erred in allowing various narrative testimony from Officer Joe Bodie; (7) the lower court erred in admitting testimony of Dr. William Hickman regarding the physical conditions of the two firefighters when they arrived at the hospital; (8) the lower court's instruction to the jury regarding interstate commerce was in error; (9) the lower court erred by denying Allen's motion for judgment of acquittal based on in insufficient evidence; (10) the lower court erred by permitting various expert testimony of Fire Investigator James F. Cooper; (11) it was error for the court to sentence Allen pursuant to USSG Sec.2A1.1 (first degree murder)