NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0182n.06

Case No. 14-1366

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 09, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | **ON APPEAL FROM THE** |
| **v.** | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE EASTERN** |
| **DEON ARCHIE POWELL,** | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |
| _____/ | ) | |

**Before: KEITH, MERRITT, and BOGGS, Circuit Judges**

**DAMON J. KEITH, Circuit Judge**.

The central issue in this case is whether the district court erred in denying the defendant's motion to suppress guns and ammunition seized pursuant to an allegedly stale search warrant. Because the good-faith exception to the exclusionary rule applies to the government's search and seizure, we **AFFIRM**.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2011, a magistrate judge in the Eastern District of Michigan issued a search warrant. Special Agent James Koss of the United States Drug Enforcement Agency submitted an

affidavit to support the search warrant application. *See* R. at 62.[1] The affidavit details a drug trafficking enterprise led by Anthony Edwards and Clarence Williamson. The warrant sought documentary and physical (but non-narcotic) evidence of drug and firearm offenses, including guns and ammunition. R. at 62, 73.

On May 17, 2011, pursuant to the issued search warrant, law enforcement agents searched a residence located at 7324 Grandmont Avenue in Detroit, Michigan. The agents found firearms and ammunition. *See* R. at 409. According to the affidavit, Powell resided at the Grandmont address.

The United States charged Powell with one count of being a felon in possession of firearms and one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Powell filed a motion to suppress. *See* R. at 51. In his motion to suppress, Powell argued that the government lacked probable cause to search the Grandmont residence. The district court denied Powell's motion to suppress. *See* R. at 545. The district court declined to decide whether probable cause supported the search warrant, characterizing this question as "very close." R. at 561. However, the district court held that the evidence seized pursuant to the search warrant was admissible under the good-faith exception to the exclusionary rule. *See* R. at 561–62.

Powell went to trial. The United States entered the guns and ammunition into evidence. On September 25, 2013, the jury convicted Powell on both counts. R. at 112. The district court entered final judgment in March of 2014. R. at 154. Powell appealed the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1] "R." designates citations to the paginated record of the proceedings below. Thus, "R. at 62" refers to PageID 62.

## II.     ANALYSIS

Powell argues that the district court erred in denying his motion to suppress because probable cause did not support the search warrant. Powell further argues that the good-faith exception to the exclusionary rule does not apply because the affidavit supporting the search warrant was so lacking in probable cause that no reasonable officer could have considered it valid. We disagree with Powell's second argument and hold that the good-faith exception to the exclusionary rule applies in this case. Based on this disposition, we decline to consider whether probable cause supported the search warrant. *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005).

Probable cause must support a search warrant. U.S. Const. amend. IV. Probable cause supports a search warrant when the underlying affidavit creates "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where the affidavit underlying the search warrant fails to create such a fair probability, courts ordinarily must suppress evidence obtained pursuant to the invalid search warrant. *See Davis v. United States*, 131 S. Ct. 2419, 2426 (2011). This rule is called the "exclusionary rule."

The Supreme Court has created a "good-faith exception" to the exclusionary rule. Under the good-faith exception, "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant. *Herring v. United States*, 555 U.S. 135, 142 (2009) (citation omitted) (internal quotation marks omitted). We review *de novo* the district court's legal conclusion that the good-faith exception applies. *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (citation omitted).

The Supreme Court has identified at least four situations in which the government's reliance on a subsequently invalidated search warrant is objectively unreasonable: (1) where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) "where the issuing magistrate wholly abandoned his [neutral and detached] judicial role"; (3) where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where the warrant is so "facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citations omitted) (internal quotation marks omitted).

The good-faith standard is "less demanding" than the "threshold required to prove the existence of probable cause." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) (citation omitted). Thus, the good-faith exception applies where "the affidavit contain[s] a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity." *Id.* at 596 (citations omitted); *see also United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005) (suggesting that the good-faith exception applies when the affidavit underlying the warrant provides "*some* connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched").

The good-faith exception applies in this case. The affidavit created a minimally sufficient nexus between the drug and firearm activity and the Grandmont residence for the executing agents to reasonably believe that the residence contained evidence of drug and firearm offenses. First, the agents had reason to believe that Powell resided at the Grandmont property because he

listed it as his address, maintained its electric service in his name, and frequently parked two of his cars there. R. at 70. Also, the affidavit states that a controlled buy transpired between Edwards and a confidential informant at that address on September 30, 2010. During this transaction, Edwards briefly entered the Grandmont residence and, upon exiting, supplied the confidential informant with two ounces of heroin. R. at 68; *see also United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("Commission of a drug transaction outside of a house and one participant's walking back into the house . . . plainly demonstrate[s] a sufficient nexus with the house."). Further, the affidavit states that Powell discussed both selling heroin to Edwards on September 21, 2010 and buying marijuana from Edwards on September 25, 2010. R. at 66–67. Thus, because the facts indicated that Powell lived at the Grandmont property, the agents could have reasonably believed that he was using his "home[] to store drugs and otherwise further [his] drug trafficking." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008). Additionally, the affidavit states that, during a conversation on December 6, 2010, Williamson told Edwards that he wanted to retrieve a bag of guns that Edwards was storing at "that house," which Special Agent Koss understood as a potential reference to the Grandmont property. *See* R. at 68–70; *see also United States v. Rodriguez-Suazo*, 346 F.3d 637, 644 (6th Cir. 2003) (citation omitted) (internal quotation marks omitted) ("The issuing judge or magistrate may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept."). Also, we have recognized that "firearms are often used by narcotics traffickers for protection, and people generally store their firearms at home." *United States v. Chapman*, 112 F. App'x 469, 472 (6th Cir. 2004). Accordingly, it was objectively reasonable for

the agents to believe that the Grandmont residence contained evidence of drug and firearm offenses.

Powell argues that the affidavit failed to create a minimally sufficient nexus with the Grandmont residence because it had gone stale by the time the agents executed the search. To support this argument, Powell notes that the agents executed the search warrant approximately eight months after some of the key drug activity detailed in the affidavit.

We consider four factors when analyzing whether an affidavit is stale: (1) whether the crime is transitory or continuing; (2) whether the criminal is nomadic or stationary; (3) whether the thing to be seized is perishable or durable; and (4) whether the place to be searched is a forum of convenience or a secure operational base. *See United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006).

Here, the balance of the staleness factors weighs in the United States' favor. The first factor may favor Powell somewhat. Although the affidavit purports to describe a continuing drug ring, the vast bulk of the activity relating to the Grandmont residence took place in the fall of 2010. *See* R. at 65–67. Factor two, however, favors the United States. The affidavit's averments support a reasonable belief that Powell was a stable resident at the Grandmont property. As for factor three, the warrant targeted documentary and physical evidence of drug activity, including firearms and ammunition. Although firearms are transferrable, we have nevertheless stated that they "are durable goods and might well be expected to remain in a criminal's possession for a long period of time." *United States v. Pritchett*, 40 F. App'x 901, 906 (6th Cir. 2002); *see also United States v. Vanderweele*, 545 F. App'x 465, 469–70 (6th Cir. 2013) (holding that a seven-month delay in executing a search warrant for a silencer did not render it stale, partly because "a silencer is like a gun, easily transferrable, but more commonly kept by its owner for a long

time"). The final factor also favors the United States. The agents searched Powell's home, which is more like a secure operational base than a mere forum of convenience. *See United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (citation omitted) (internal quotation marks omitted) ("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation."). Accordingly, despite the eight-month time lag, the affidavit was not sufficiently stale to vitiate the minimally sufficient nexus between the Grandmont residence and the drug and firearm activity the affidavit outlines.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.