ROSE, District Judge.
CONCURRENCE
I concur in the result of the majority opinion affirming Defendant’s conviction and sentence for possessing firearms in violation of 18 U.S.C. § 922(g)(1) on January 11, 2013. While I concur in full with sections I, III, and parts B, C, D, and E of section II, I am not convinced of the reasoning behind part II A.
The lead opinion posits that “the ATF ... could have staffed an agent disguised as a construction worker to sit atop the pole or perhaps dressed as an agent in camouflage to observe the farm from ground level for ten weeks.” While United States v. Skinner, 690 F.3d 772, 780 (6th Cir.2012), implies that the actual practicability of law enforcement observing activity from a public vantage point may not be relevant, this Court has also sifted from the panoply of opinions in United States v. Jones the concern that long-term non-human surreptitious surveillance “is worrisome because ‘it evades the ordinary checks that constrain abusive law enforcement practices: “limited police resources and community hostility.” ’ ” United States v. Anderson-Bagshaw, 509 Fed.Appx. 396, 422 (6th Cir.2012)(quoting United States v. Jones, 565 U.S. -, 132 S.Ct. 945, 956, 181 L.Ed.2d 911 (2012) (Sotomayor, J., concurring) (quoting Illinois v. Lidster, 540 U.S. 419, 426, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004))).
Also, I find unconvincing the claim that, because this case involves a camera focused on Defendant’s house, and not a monitor affixed to a car, the Government cannot gather “a wealth of detail about [defendant’s] familial, political, professional, religious, and sexual associations” 132 S.Ct. at 955. Here, familial relations with Defendant’s brother and daughter were studied. Surely, in most cases, ten weeks of video surveillance of one’s house could reveal considerable knowledge of one’s comings and goings for professional and religious reasons, not to mention possible receptions of others for these and possibly political purposes. Also, by constant surreptitious technological viewing of Defendant’s house, the Government knew Defendant “occasionally slept” in his trailer. The privacy concerns implicated by a fixed point of surveillance are equal, if not greater, when it is one’s home that is under surveillance.
Finally, I do not have the same concern that “if law enforcement were required to engage in live surveillance without the aid of technology in this type of situation, then the advance of technology would one-sid-edly give criminals the upper hand.” Expediency in this particular situation is not our concern. It is for the police to work within constitutionally permitted means. Fortunately, no one proposes that law enforcement should “be powerless to thwart such behavior.” Law enforcement would *297 have the power to obtain a search warrant, returning to them the upper hand.
In this case, it is the search warrant eventually obtained by law enforcement that carries the day. “[T]he untainted portions of the affidavit were sufficient to motivate the [legal] search and would have been sufficient to convince a neutral magistrate of the existence of probable cause.” United States v. Bowden, 240 Fed.Appx. 56, 61-62 (6th Cir.2007)(quoting United States v. Keszthelyi, 308 F.3d 557, 575 (6th Cir.2002)).
The affidavit supporting the December 19, 2012 application for a search warrant to monitor the house remotely recounts how Defendant was convicted of felony evading arrest in 2004. 3:13-cr-010, Doc. 17-4, PageID#312. The application further recounts how, while Defendant and his brother were acquitted of murder for the shooting of a Roane County Sheriffs Deputy and his ride-along companion in 2006, they fired 22 shots from an assault rifle and eight rounds from a handgun in what they portrayed at trial as self-defense. A sister admitted that in January 2012 she purchased ammunition for Leon Houston. Id. PageID#313. A confidential informant testified that the two brothers used identical weaponry, to allow sharing ammunition. Id. PagelD# 314. Another sister reported in December 2011 that there were numerous firearms on the property, including an assault rifle, other long guns and handguns. Id. Pa-gelD# 312. Finally, a home health care nurse, tending to the Houston’s now-deceased father, reported that she observed multiple firearms on the property, including long guns and pistols. Id. Pa-gelD# 313. The January 11, 2013 application to enter and search the property contained the same allegations. Id. Doc. 17-2.[1] The untainted portions of the affidavit were clearly sufficient to motivate a legal search and would have been sufficient to convince a neutral magistrate of the existence of probable cause.
• Similarly, the admission as evidence at trial from video surveillance taken prior to December 19, 2013 if unconstitutional, was harmless. “To determine whether the error was harmless under Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),] the question [a] court must ask is whether, absent the improperly admitted [evidence], it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty.” United States v. Wolf 879 F.2d 1320, 1324 (6th Cir.1989). Here, the evidence is that of guns, in the trailer of Defendant, a felon. There was video of Defendant on his property in possession of a gun on the day in question obtained pursuant to a warrant. It is clear beyond a reasonable doubt that the jury would have returned a verdict with or without the pre-warrant video.
Whether or not there is a Constitutional right not to have the Government focus a remotely operated surveillance device on one’s house for ten-week stretches without a warrant, any error was harmless, because the search warrant application would have been approved absent any potentially prohibited evidence and the other evidence that Defendant possessed a firearm on January 11, 2013 was overwhelming. I concur in the judgment affirming Defendant’s conviction and in all other respects of the opinion.

. Firearms "are durable goods and might well be expected to remain in a criminal’s possession for a long period of time.” United States v. Powell, 603 Fed.Appx. 475, 478 (6th Cir.(2015))(quoting United States v. Pritchett, 40 Fed.Appx. 901, 906 (6th Cir.2002)).